George W. and Harriet
M. CRAWFORD,
Appellants,

v.

SIGNET BANK, et al., Appellees.

No. 98–7105.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 11, 1999.

Decided June 25, 1999

George W. Crawford argued the cause for the appellants.

Gary C. Tepper argued the cause for appellees Signet Bank and Signet Mortgage Corporation. Samuel K. Charnoff was on brief.

Stephen A. Fennell argued the cause for appellee Steele Software System Corporation. Brian J. Leske was on brief.

Jack A. Gould and Matthew W. Lee were on brief for appellees Capitol Appraisal Service, Inc. and Stephen F. Fenning.

Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

**KAREN LeCRAFT HENDERSON, Circuit Judge:**

■ George W. and Harriet M. Crawford appeal the district court's adverse summary judgment in an action for discriminatory mortgage denial and negligent house appraisal. Appellee Signet Mortgage Corporation, formerly a subsidiary of appellee Signet Bank, (collectively referred to as Signet)[1] denied the Crawfords' application for a home mortgage refinance loan on the asserted ground that the Crawfords' home equity was insufficient based on an appraisal by appellee Stephen F. Fenning, an employee of appellee Capitol Appraisal Service (Capitol). The appraisal was contracted to Capitol by appellee Steele Software Systems Corporation (Steele), an appraisal management company engaged by Signet. The district court concluded that the Crawfords neither established a prima facie case of discrimination nor articulated a standard of care for the appraisal profession, the breach of which could support a negligence claim. We agree with these conclusions and affirm the summary judgment.[2]

## I.

In February 1994 Lonnie Bass, a Signet employee, solicited the Crawfords by telephone to refinance their house. In March 1994 the Crawfords submitted an application for a loan in the amount of $233,000, representing the value of their house as $325,000.

On March 24, 1994 Connee Piercy, a Signet loan underwriter approved a loan for $233,000 conditioned on, *inter alia*, receiving an appraisal value for the Crawfords' house of at least $311,000. Signet then contacted Steele which arranged for Capitol to appraise the Crawfords' house. Capitol assigned the appraisal to Fenning who performed a "walk-through" home-comparison appraisal and prepared a report dated April 8, 1994 that valued the house at $190,000.

Bass told the Crawfords the amount of the appraisal and asked for any information they had to support their representation that the house was worth $325,000. The Crawfords sent Bass two earlier appraisals: one dated August 23, 1990 for $304,000 and one dated August 10, 1993, for $340,000.[3]

Jack May, a senior appraiser at Signet, notified Steele of the disputed valuation and Steele informed Capitol, requesting a review of Fenning's appraisal. In a letter dated April 19, 1994 Capitol reported that Fenning's estimate was "at the high end for the neighborhood" and concluded it "was justified and well supported." Appendix Exhibits (App. Exhs.) 46. On April 26, 1994 Steele informed May of the review of Fenning's appraisal and of the drive-by appraisal value. May "deferred to Capitol and Steele's conclusion that the Capitol appraisal was well-founded and that the 1990 and 1993 appraisals were not." *Id.* 339. Accordingly, he recom-

---

1. Signet has since been merged into First Union Corporation. *See* Signet's Certificate as to Parties, Rulings and Related Cases (filed as part of Signet's brief on Feb. 26, 1999).

2. We also affirm the district court's denial of the Crawfords' motion to extend discovery because the Crawfords did not inform the court when the defendants filed their summary judgment motions that additional facts were needed to oppose the motions, as required by Fed.R.Civ.P. 56(f) ("Should it appear from the affidavits of a party opposing the motion that the party cannot *for reasons stated* present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may

order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.") (emphasis added). *See Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C.Cir.1989) (citing rule 56(f) to affirm denial of discovery extension where plaintiff "never stated concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [defendant's] summary judgment motion").

3. The Crawfords did not mention two lower appraisals: one dated February 27, 1989 for $225,000 and one dated June 22, 1992 for $235,000.

mended to Piercy that Signet "should continue to rely on the Capitol appraisal." *Id.* 339–40. On May 4, 1994 Piercy notified the Crawfords that the loan was denied because of "[i]nadequate collateral." *Id.* 51.

The Crawfords filed this action on October 17, 1996. The second amended complaint (filed July 2, 1997) alleges seven counts: (1) racially discriminatory "redlining"[4] in violation of 42 U.S.C. § 1981; (2) conspiring to redline in violation of 42 U.S.C. § 1985(3); (3) negligent review of Fenning's appraisal by Signet; (4) negligent appraisal by Steele, Capitol and Fenning; (5) vicarious liability against Signet for Steele's and Capitol's negligence; (6) vicarious liability against Steele for Capitol's negligence; and (7) vicarious liability against Capitol for Fenning's negligence. App. Exhs. 75–87. The district court granted summary judgment in the defendants' favor in an unpublished memorandum and opinion filed April 16, 1998. The Crawfords appeal the court's judgment.

## II.

"We review grants of summary judgment *de novo*; a party is only entitled to summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc). Applying this standard, we affirm the district court.

First, we conclude the Crawfords failed to make out a prima facie case of discrimination in violation of 42 U.S.C. § 1981 or § 1985(3). Under the familiar burden shifting scheme *of McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973), a prima facie case of discrimination requires a showing "that a qualified plaintiff who is a member of a protected class was disadvantaged in favor of a person who is not a member of the protected class." *Whitacre v. Davey*, 890 F.2d 1168, 1169–70 (D.C.Cir. 1989); *see, e.g., Kolstad v. American Dental Ass'n*, 108 F.3d 1431, 1436 (D.C.Cir. 1997) ("Where sex discrimination in promotion is alleged, a plaintiff proves her prima facie case by showing that she is female, that she was refused a position for which she applied and was qualified, and that the employer filled the position with a male."); *Paquin v. Federal Nat'l Mortgage Ass'n*, 119 F.3d 23, 26 (D.C.Cir.1997) ("In the [Age Discrimination in Employment Act] context a complainant makes his required *prima facie* showing if he (i) belongs to the protected age group, (ii) was qualified for the position, (iii) was terminated and (iv) was replaced by a younger person."). Assuming the framework applies in a redlining case,[5] the Crawfords were required to show *inter alia* that they were "qualified" for the loan they were denied. *Accord Latimore v. Citibank, F.S.B.*, 979 F.Supp. 662, 665 (N.D. Ill.1997) ("[I]n a case where the plaintiff alleges that her loan application was discriminatorily denied, she must prove (1) that she is a member of a protected class, (2) that she applied for and was qualified for a loan, (3) that the loan was rejected despite her qualifications, and (4) that the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff.") (citing *Thomas v. First Fed. Sav. Bank*, 653 F.Supp. 1330, 1338 (N.D. Ind.1987); *Gross v. United States Small Bus. Admin.*, 669 F.Supp. 50, 52–53

---

4. "Redlining" is "the practice of financial institutions intentionally not lending to certain neighborhoods or parts of a community." H.R.Rep. No. 104–193 at 177 (1995).

5. The Seventh Circuit has concluded the *McDonnell Douglas* framework is not "available" in a mortgage discrimination suit and that therefore a plaintiff in such a case is required to "try to show in a conventional way, without relying on any special doctrines of burden-shifting, that there is enough evidence, direct or circumstantial, of discrimination to create a triable issue." *Latimore v. Citibank, Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir.1998). We need not resolve this issue here because, as we explain, assuming that the framework does apply, the Crawfords have failed to meet their burden under it.

(N.D.N.Y.1987); *Bell v. Mike Ford Realty Co.*, 857 F.Supp. 1550, 1556 (S.D.Ala. 1994)). They failed to make such a showing.

The Signet loan approval was by its terms contingent ·upon "[r]eceipt and review of satisfactory subject property appraisal to support a minimum fair market value of $311,000." Signet Supplemental App. at 11. The only appraisal report meeting this value requirement, the one dated August 24, 1993, was not "satisfactory" because, as the Crawfords acknowledged at oral argument, as of April 1994 it was eight months old and it had not been recertified by an appraiser within the previous four months as required by the Federal National Mortgage Association (FannieMae). *See* FannieMae Appraisal Guide § 201 (App. Exhs. 414–15) (providing "the property must have been appraised within the 12 months that precede the date of the note and mortgage" and when appraisal "will be more than four months old on the date of the note and mortgage," appraiser "must inspect the exterior of the property and review current market date" and provide a "certification" that "he or she believes that the property has not declined in value"); [6] *see also* App. Exhs. 338–39 (affidavit of Jack May). Because there was no evidence before the district court of an appraisal satisfying the loan approval conditions, we conclude the Crawfords failed to show they were qualified for the loan they sought and therefore did not establish a prima facie case of discrimination.

 The Crawfords also failed to produce evidence to support their remaining claims. As the district court correctly concluded, counts 3 and 4, alleging negligence by Signet, Steele, Capitol and Fenning, required expert testimony on the standard of care governing the appraisal profession. *See District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C.1995) ("The plaintiff in a negligence action bears the burden of proving the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury. Furthermore, if the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson, expert testimony is usually required to prove the standard of care.") (internal quotations omitted). None was offered. Further, because the Crawfords established no underlying negligence as alleged in counts 3 and 4, summary judgment was properly granted on counts 5 through 7 alleging vicarious liability for the negligence. "[V]icarious liability is not an independent cause of action, but rather is a legal concept used to transfer liability from an agent to a principal at trial." *Young v. 1st American Fin. Servs.*, 977 F.Supp. 38 (D.D.C.1997). In the absence of agent liability, therefore, none can attach to the principal.

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

---

**6.** The Crawfords agreed at oral argument that if appraisers followed the FannieMae guidelines, they would be "okay," that is nondiscriminatory.