John M. HAYES, M.D., Plaintiff,

v.

CHARTERED HEALTH PLAN, d/b/a Chartered Family Health Center, P.C., et al., Defendants.

No. 01–1188 (RJL).

United States District Court, District of Columbia.

March 11, 2004.

Brian F. Holeman, Largo, MD, for Plaintiff.

Stephen Lybrook Neal, Jr., Manatt, Phelps & Phillips, L.L.P., Charles Anthony Jones, Ross, Dixon & Bell, LLP, David F. Grimaldi, Martell, Donnelly, Grimaldi &

Gallagher, P.A., Alan S. Block, Bonner, Kiernan, Trebach & Crociata, Charles Bennett Molster, III, Winston & Strawn LLP, Washington, DC, Allan Ames Noble, Budow & Noble, P.C., Bethesda, MD, David Barmak, Mintz, Levin, Cohen, Ferris, Glovsky & Popeo, P.C., Reston, VA, for Defendants.

## MEMORANDUM OPINION

LEON, District Judge.

Before the Court are the motions to dismiss of five of the remaining seven defendants in this case, Marsh USA, Inc. ("Marsh"), Chartered Health Plan ("Chartered"), Robert L. Bowles, Healthcare Insurance Services Inc. ("HIS"), and Western Indemnity Insurance Co. ("Western").[1] The plaintiff, John M. Hayes, M.D. ("Hayes" or "plaintiff"), seeks declaratory relief and damages for contract, tort, and equitable claims arising from alleged failures on the part of the defendants to obtain, provide, or maintain insurance coverage for medical malpractice. For the reasons set forth below, the Court GRANTS in part, and DENIES in part, the defendants' motions.

### Factual Background

According to the plaintiff, on or about August 1, 1993, he entered into an employment agreement with defendant Chartered to provide medical and administrative services for patients of Chartered and other health care facilities owned by Chartered.[2] The plaintiff asserts that the contract was renewed on March 27, 1995 and that his employment with Chartered lasted until sometime in 1999. Compl. ¶ 13.[3] Because injuries sustained by a child during labor and delivery may not be evident until years later, the plaintiff alleges that he demanded as a condition of his employment extended reporting period malpractice insurance coverage, or "tail" coverage, to cover the risk of any injurious acts *predating* his employment with Chartered. Compl. ¶ 15. The plaintiff further alleges that on December 20, 1993, Chartered obtained a quotation for retroactive coverage from Frances Roberson of agent / broker Johnson and Higgins, predecessor to defendant Marsh. Compl. ¶ 18–19.

Subsequent to the commencement of the plaintiff's employment with Chartered, three separate civil actions were filed against the plaintiff for alleged malpractice for events that occurred in 1992. The first two suits, *Dianne Bragg v. Columbia Hospital for Women, John M. Hayes, M.D. and Drs. Clarke, Greenfield, Chartered* ("*Bragg*"), filed on May 5, 1994, and *Nancy Crawford v. John M. Hayes, M.D.*

---

1. On February 18, 2004, the parties entered a joint stipulation of dismissal with regard to defendant Continental Insurance Co. ("Continental"). On March 2, 2004, the Court ordered that Continental be dismissed from the suit with prejudice. Accordingly, Continental's Motion to Dismiss, filed on August 15, 2001, is moot.

2. There is some dispute in the pleadings as to the effective date of the plaintiff's employment with Chartered. The plaintiff alleges that he entered an initial employment agreement with Chartered on or about August 1, 1993 that was renewed on March 27, 1995. Compl. ¶¶ 13–14. However, in its motion to dismiss, Chartered asserts that its relationship with the plaintiff is governed solely by the March 27, 1995 employment agreement and that with regard to an August 1, 1993 agreement, the "[d]efendants are not aware of any such agreement." Chartered Mot. to Dismiss, at 5 n. 7. Chartered notes that there is a November 1, 1993 agreement between the plaintiff and Capitol Area Health Services, a company that is not a party to this litigation. *Id.*

3. Defendant Chartered appears to concur that the plaintiff left its employment "sometime in 1999." Chartered Mot. to Dismiss, at 9.

("*Crawford* "), filed on June 29, 1995, were reported to Chartered. Compl. ¶¶ 20, 22. Chartered referred these matters to Continental, an insurance company that issued several successive policies to Chartered during the time the plaintiff was employed by Chartered. Compl. ¶¶ 21, 23. Continental appointed defense counsel, financed the litigation, authorized settlement discussions, and approved settlement on the plaintiff's behalf in those two cases.[4] Compl. ¶¶ 20–23.

On September 15, 1999, a third malpractice suit based on events that occurred in 1992 was filed against the plaintiff, *Artulies Smith v. Columbia Hospital for Women, John M. Hayes, M.D. and Drs. Clarke, Greenfield, Chartered* ("*Smith* "). This third malpractice action is the focus of the present case. The plaintiff alleges that the actions of Chartered and Continental with regard to the *Bragg* and *Crawford* matters caused him to "believe that the necessary tail coverage had been obtained to protect him for alleged injurious acts occurring prior to his employment with Defendant Chartered." Compl. ¶ 24. However, when the plaintiff referred the *Smith* matter to Continental, he received no response, which he asserts was effectively a denial of coverage and a refusal to defend or indemnify him. Compl. ¶ 36.

The plaintiff alleges that during 1998 and 1999, Chartered and its president, Robert L. Bowles, obtained malpractice insurance, without his knowledge, through agent / broker defendants Aon Risk Services and HIS. Compl. ¶¶ 27, 29. During this time, coverage was bound under policies underwritten by defendants Reliance National Insurance Company ("Reliance")

and Western, rather than by Continental. Compl. ¶¶ 27, 29. According to the plaintiff, both Western and Reliance denied coverage, and refused to defend or indemnify the plaintiff with regard to the *Smith* matter. Compl. ¶ 35 The plaintiff thus asserts that even though Chartered, its president, Robert L. Bowles, and Continental knew that the coverage by Continental was inadequate, lapsed, cancelled or discontinued, none of these parties notified him of these facts. Compl. ¶ 25. Moreover, the plaintiff claims that the agent / brokers and insurance companies from which Chartered obtained coverage in 1998 and 1999 (as well as Chartered, Bowles, and Continental) understood the plaintiff's need for tail coverage, but failed to obtain or provide the necessary coverage, or to notify the plaintiff that he was not covered.

Based on these allegations, the plaintiff sets forth ten separate claims in contract, tort, and equity. Among these claims are intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count IX), and vicarious liability and apparent or ostensible agency (Count VII). For the following reasons, the Court grants the defendants' motions to dismiss to the extent that they address these three counts of the Complaint, and denies them as to the remaining counts of the Complaint.

### Discussion

█ The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

4. The extent of the coverage provided by Continental's successive policies (as well as the policies of other defendants) is clearly in dispute in this case. Continental asserts that there were policies in place at the time the *Bragg* and *Crawford* cases were filed (policies in effect from May 1, 1994 to May 1, 1995, and from May 1, 1995 to May 1, 1996) and that its most recent policy was in effect from May 1, 1997 to May 1, 1998. Continental Mot. to Dismiss, at 2–4.

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir. 1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276. For the following reasons, the Court concludes that the plaintiff in this case cannot prove a set of facts sufficient to support his claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and vicarious liability.

## I. *Intentional Infliction of Emotional Distress (Count V)*

▮▮▮ Under District of Columbia law, a plaintiff claiming intentional infliction of emotional distress must show that the defendants engaged in extreme and outrageous conduct that, intentionally or recklessly, caused the plaintiff severe emotional distress. *Clifton v. Federal Nat'l Mortgage Assoc.,* 1998 WL 419741, at *5 (D.D.C., Jan. 14, 1998); *Anyaibe v. Gilbert Security Service, Inc.,* 1995 WL 322452, at *6 (D.D.C., May 18, 1995); *King v. Kidd,* 640 A.2d 656, 667–68 (D.C. 1993). Indeed, liability will be found only "where the conduct has been so outrageous in character, and so extreme in de-

gree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982) (citing Restatement (Second) of Torts § 46 (1965)). Fraud, alone, is not enough to state a claim for intentional infliction of emotional distress. *See Massengale v. Ogu,* 1992 WL 25894, at *1 (D.D.C., Jan.28, 1992). Here, the plaintiff's allegations, even if accepted by the Court as true, cannot possibly rise to the level of "extreme and outrageous" conduct. At best, the plaintiff can prove that the defendants knew that he needed tail coverage, either intentionally or negligently failed to secure coverage or notify him that he had no such coverage, and then covered up these failures. *See* Pl. Opp. to Chartered Mot. to Dismiss, at 16 ("The acts alleged were tantamount to a coverup..."); Pl. Opp to HIS Mot. to Dismiss, at 9 (same). Even if proven, these acts do not "go beyond all possible bounds of decency."[5] *See, e.g., Burnett v. Al Baraka Investment and Development Corp.,* 274 F.Supp.2d 86, 107 (D.D.C.2003) (plaintiffs stated a claim for intentional infliction of emotional distress where defendants were alleged to have "aided and abetted and conspired with the September 11 hijackers"); *Sere,* 443 A.2d at 37–38 (upholding directed verdict for defendant employer on intentional infliction of emotional distress claim where plaintiff alleged that his employer breached contract of insurance by failing to pay

---

**5.** The plaintiff cites *King v. Kidd,* 640 A.2d 656 (D.C.1993) for the proposition that the conduct in this case, acts "tantamount to a coverup," is sufficient for jury consideration of an intentional infliction of emotional distress claim. Pl. Opp. to Marsh Mot. to Dismiss, at 9. However, plaintiff fails to acknowledge that the District of Columbia Court of Appeals specifically grounded its opinion on

evidence of the defendant's "serious abuse of supervisory authority" that took advantage of the plaintiff's "vulnerable position as a female employee," thereby contributing to an intimidating and hostile work environment. *Kidd,* 640 A.2d at 674. The plaintiff alleges no such conduct in this case and accordingly, the Court finds no support in *Kidd* for the plaintiff's assertion.

claims); *cf. Al–Ibrahim v. Edde*, 897 F.Supp. 620, 626 (D.D.C.1995) (dismissing intentional infliction of emotional distress claim under California law where plaintiff alleged that his employer required him to sign for gambling winnings and breached an oral contract to pay the plaintiff for any tax liability, subjecting the plaintiff to pursuit by the IRS). "The law does not, and doubtlessly should not, impose a general duty of care to avoid causing mental distress," *Harvey v. Strayer College, Inc.*, 911 F.Supp. 24, 27 (D.D.C. 1996), and thus, absent a showing of extreme and outrageous conduct, a claim for intentional infliction of emotional distress must fail. Accordingly, the Court grants the defendants' motions to dismiss Count V of the Complaint.

## II. *Negligent Infliction of Emotional Distress (Count IX)*

 Similarly, the plaintiff seeks an award of damages for negligent infliction of emotional distress under Count IX of the Complaint. Under District of Columbia law, plaintiff can recover for negligent infliction of emotional distress if either the emotional distress resulted from a direct physical injury, or the plaintiff was in the "zone of physical danger" created by the defendant's negligence and he feared for his own safety. *Mackey v. United States*, 8 F.3d 826, 831 (D.C.Cir.1993); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F.Supp. 13, 20 (D.D.C. 1996); *District of Columbia v. McNeill*, 613 A.2d 940, 942–43 (D.C.1992). The requirement of a physical injury or a showing that the plaintiff feared for his safety as a result of the defendant's negligence reflects the "wary eye" cast by courts in the District of Columbia on negligent infliction of emotional distress claims. *Harvey v. Strayer College, Inc.*, 911 F.Supp. 24, 28 (D.D.C.1996). Here, however, the plaintiff merely alleges that he suffered and continues to suffer "severe, serious and permanent physical and emotional pain, anguish and suffering" because the defendants knew that he was in need of tail coverage, and either failed to provide the coverage or notify him that he was not covered. Compl. ¶¶ 120–122. Presumably, the plaintiff would have plead facts indicating that he was in a "zone of danger" that caused him to fear for his safety as a result of the defendants' negligence if he could have. *See Mackey*, 8 F.3d at 831 (finding that the plaintiff was not in a "zone of danger" where a hospital failed to give notification of her aunt's death because this conduct "did not 'endanger anyone's physical well-being'"); *Kun*, 949 F.Supp. at 20 (granting motion to dismiss negligent infliction of emotional distress claim where plaintiff alleged that defendant employer failed to stop racial slurs and harassment by employees because plaintiff failed to show zone of physical danger). But he didn't. Consequently, the Court cannot conceive of any set of facts under which the failure to obtain malpractice insurance or notify him of such failure would have endangered the plaintiff's physical safety. Accordingly, the defendants' motions to dismiss are granted with regard to Count IX of the Complaint.

## III. *Vicarious Liability and Apparent or Ostensible Agency (Count VII)*

 Finally, Count VII of the Complaint charges that as "a direct consequence of the negligent and intentional actions, omissions and / or commissions of the individual Defendants and of one another," the defendants are vicariously liable for such actions, omissions and / or commissions leading to injuries and damages of the plaintiff. Compl. ¶ 104. Although the plaintiff clearly "cannot possibly know, definitely, the full extent of the relationships of each of the Defendants

with each other," Pl. Opp. to Chartered Mot. to Dismiss, at 20, this claim must be dismissed because vicarious liability is not an independent cause of action. *Crawford v. Signet Bank,* 179 F.3d 926, 929 (D.C.Cir. 1999); *Young v. 1st American Financial Services,* 977 F.Supp. 38, 41 (D.D.C.1997). Vicarious liability is rather a legal concept employed to transfer liability from an agent to a principal at trial. *Crawford,* 179 F.3d at 929. In the absence of agent liability, no liability can attach to the principal. *Id.* Accordingly, the Court dismisses Count VII of the Complaint. The plaintiff may, however, advance a theory of vicarious liability or agency of the defendants at trial to the extent that the Complaint charges such defendants jointly under other counts.

### ORDER

For the reasons set forth above, it is this 11th day of March, 2004, hereby

**ORDERED** that the motions to dismiss of defendants Marsh USA, Inc. [# 11], Chartered Health Plan and Robert L. Bowles [# 18], Healthcare Insurance Services Inc. [# 42], and Western Indemnity Insurance Co. [# 45] are **GRANTED** in part, with respect to Counts V, VII, and IX of the Complaint; and it is further

**ORDERED** these defendants' motions to dismiss are **DENIED** with regard to the remaining Counts of the Complaint; and it is further

**ORDERED** that the motion to dismiss of Continental Insurance Co. [# 9] is **DENIED** as moot.

**SO ORDERED.**