## U–HAUL COMPANY OF EAST BAY, INC., Appellant,

v.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

### No. 89–CV–1383.

District of Columbia Court of Appeals.

Argued Nov. 5, 1992.
Decided Nov. 30, 1992.

---

James R. Schraf, Washington, D.C., for appellant.

Philip R. Murray, Rockville, Md., for appellee. Marie Manuele Gavigan, Rockville, Md., filed the brief, for appellee.

Before FERREN and STEADMAN, Associate Judges, and KERN, Senior Judge.

FERREN, Associate Judge:

At a bench trial in Small Claims Court, the judge found defendant-appellant, U–Haul Company of East Bay, Inc., liable for $450.13 in damages caused by a U–Haul truck to an automobile owned by Robert Watkins and insured by plaintiff-appellee. Appellant contends that it should not be held liable as an "owner" of the vehicle under the Motor Vehicle Safety Responsibility Act, D.C.Code § 40–408 (1990 Repl.). We affirm.

Before trial, the parties stipulated to most of the facts. Herbert Gaines rented a U–Haul truck, which struck the legally parked car of Robert Watkins on July 18, 1985, resulting in damage totalling $450.13. Watkins sought to recover $100 of this amount (representing the deductible under his insurance policy) from Gaines and appellant U–Haul. His insurer, State Farm, demanded the balance. The parties also stipulated that appellant, a U–Haul subsidiary, "owned" the vehicle.

At trial, appellant presented testimony concerning U–Haul's corporate structure and rental system. An employee explained that local dealers, some independent and some company owned, actually rent the vehicles to customers. These dealers handle equipment allocated by regional marketing companies. Appellant is one of these companies, located in Fremont, California; it is a subsidiary of the parent U–Haul corporation in Phoenix, Arizona. The Phoenix office establishes the rental procedures and designs the contracts used nationally. The employee further testified that "the parent office," which she also referred to as Americo, comprises the "fleet owners" of the trucks. The titles, however, are actually held by the regional marketing companies, such as appellant, in order to comply with an agreement that all rental companies have with the various jurisdictions to divide the registrations "based upon whatever percent of one-way ... miles occurred in a State in a particular 12–month period." *See, e.g.,* D.C.Code § 40–113 (1990 Repl.).

The Motor Vehicle Safety Responsibility Act creates a rebuttable presumption that any operator of a vehicle has the consent of its owner and is therefore the owner's agent:

> Whenever any motor vehicle ... shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

D.C.Code § 40–408. Another provision of this statute defines the term "owner":

> A person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof *with the right of purchase* upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this subchapter.

§ 40–402(7) (1990 Repl.) (emphasis added). This definition, therefore, excludes from the category of "owner" a mere legal title-holder whose equitable title has shifted to someone else. The statute, however, carefully limits this exception. It transforms into "owners" only those persons without legal title who both have possession of the vehicles and also are parties to contracts allowing for its eventual purchase. Under this statute, therefore, only when a lessee

has "the right of purchase" does the lessee become an "owner" without holding the legal title to the vehicle. Thus, U–Haul rental customers like Herbert Gaines, who do not contract for the right to purchase, do not come within this exception. Under the plain language of the statute, appellant U–Haul, as titleholder, remains the "owner" for purposes of the Motor Vehicle Safety Responsibility Act.

█ Nevertheless, in *Lee v. Ford Motor Co.*, 595 F.Supp. 1114 (D.D.C.1984), the federal district court expanded the category of legal titleholders excluded from the definition of "owner" to encompass one type of commercial lessor whose lease agreement did not provide for a right of purchase. In that case, Ford had entered into a long-term lease with a government agency covering a fleet of automobiles. An agency employee injured a child while operating one of Ford's vehicles. The district court declined to deem Ford, the titleholder, an "owner" within the meaning of the Motor Vehicle Safety Responsibility Act. The court found that "[u]nder the lease, title remained in Ford but authority to control and operate the vehicles was given to the lessee." *Id.* at 1116. At this time we need not consider whether *Lee* was correctly decided because appellant's situation is clearly distinguishable from Ford's. In *Lee,* the long-term lease with Ford gave the government agency an arrangement analogous to the equitable title recognized in the definition of "owner" in § 40–402(7). In contrast, a short-term rental contract, such as the one between appellant U–Haul and Herbert Gaines, does not create the virtual ownership arrangement that *Lee* found Ford had, in effect, conferred upon the government agency through the long-term lease.

In the past, this court has judicially created a few narrow exceptions to the definition of "owner" in § 40–402(7) in addition to the equitable title exception in the statute itself. These exceptions have arisen from unusual circumstances where a legal titleholder could not exercise control over the vehicle. *See Johnson v. Keyes,* 201 A.2d 24 (D.C.1964) (non-driving wife held not to be "owner" of car registered to her

for financial convenience of estranged husband, who caused accident); *Bush v. Johnson,* 215 A.2d 850 (D.C.1966) (sister of negligent driver held not to be "owner" under circumstances "very similar" to those in *Johnson v. Keyes*); *Spindle v. Reid,* 277 A.2d 117 (D.C.1971) (when minor son involved in accident, mother held not to be "owner" of car because she took title only to help him obtain financing); *McClellan v. Allstate Insurance Co.,* 247 A.2d 58 (D.C. 1968) ("hapless motorist" surrendered control of his car to person misrepresenting himself as parking lot attendant, who caused accident). More recently in *Curtis v. Cuff,* 537 A.2d 1072 (D.C.1987), this court took a different approach to a comparable situation. We concluded that a wife was an "owner" within the meaning of § 40–402(7), but we looked to her estrangement from her husband as a reason for holding that she was not responsible for an accident he caused, since she had not consented to his use of the car.

Appellant's situation, however, does not resemble any of the unusual circumstances described in these cases. On the contrary, U–Haul is in the business of putting rental vehicles into the stream of commerce, where they are foreseeably exposed to accidents. Because appellant is profitting from a sometimes risky business enterprise, it cannot characterize itself as an unwitting victim of someone else's use of its vehicles, similar to the titleholders excluded from ownership in the cases cited above. U–Haul's Phoenix office, in establishing national procedures for rental agents, can always put tighter restrictions on who may rent and drive U–Haul vehicles. Moreover, rental companies are still allowed to rebut the presumption of consent in particular cases. *See Neary v. Hertz Corp.,* 231 F.Supp. 480 (D.D.C.1964) (lessor rebutted presumption of consent by notifying corporate lessee not to allow named employee to drive its truck); *Amicar Rentals v. Moore,* 294 A.2d 361 (D.C. 1972) (rental car company rebutted presumption of consent by filing criminal complaint for failure to return car).

Appellant argues that its compliance with the Compulsory/No–Fault Motor Vehicle Insurance Act, D.C.Code §§ 35–2101 to –2114 (1988 Repl.), sufficiently protects the public from negligent drivers of U–Haul vehicles without additional exposure as an owner under § 40–402(7). We disagree. The mandatory liability insurance scheme adopted by the District of Columbia many years after enactment of the Motor Vehicle Safety Responsibility Act by no means replaces the protection afforded by the earlier statute. Rather, adoption of the Compulsory Insurance Act reinforced the importance of providing alternative avenues of recovery reflected in the statutory purposes underlying the Motor Vehicle Safety Responsibility Act. Because liability insurance policies have recovery limits, the Compulsory Insurance Act is not a complete safeguard against injuries caused by negligent drivers of rental vehicles, such as those supplied by U–Haul.

*Affirmed.*