Emelike U. AGOMO, et al., Appellants,

v.

**Adrian FENTY, Mayor, District of Columbia, Appellee.***

No. 03–CV–813.

District of Columbia Court of Appeals.

Argued May 12, 2005.

Decided Feb. 1, 2007.

---

* Under D.C.App. R. 43(c)(2) Mayor Adrian Fenty has been substituted for former Mayor Anthony Williams as an appellee and the caption amended as reflected above.

 

 

 

Thomas Ruffin, Jr., Washington, DC, with whom Horace L. Bradshaw, Jr., was on the brief, for appellants.

Stephen C. Rogers, Volunteer Attorney, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellants Emelike U. Agomo and Auto Ward, Inc. filed a complaint against the District of Columbia under 42 U.S.C. § 1983, alleging that the Automated Traffic Enforcement System ("ATE System") established by D.C.Code § 50–2209.01 (2001) *et seq.* violates the guarantees of due process under the Fifth Amendment of the Constitution. In essence, the ATE System detects moving violations under the District's traffic laws through the use of photographs taken by automated cameras installed at various locations throughout the District. The trial court denied the District's initial motion to dismiss the complaint on January 14, 2003, but six months later granted summary judgment for the District and denied appellants' subsequent motion to alter or amend the summary judgment order on July 14, 2003. Appellants filed a timely notice of appeal on July 21, 2003.

Appellants argue that the method of assessing liability preliminarily to the registered owner of the car conflicts with the statutory framework set forth in D.C.Code § 50–2302.06(a), which requires that the District prove a moving violation by clear and convincing evidence, and that this "presumption of liability" violates their due process rights. Second, appellants argue that the compensation arrangement with a private corporation, Automated Computer Systems, Inc. ("ACS"), for certain administrative aspects of the ATE System violates due process by creating an adjudicatory tribunal that is tainted by financial considerations. We hold that there exists no constitutional violation as asserted and affirm.

## Background

### I. The Statutory Scheme

#### A. *D.C.Code Title 50, Chapter 23: Traffic Adjudication*

The stated purpose of the traffic adjudication statutes is "to decriminalize and to provide for the administrative adjudication of certain violations," D.C.Code § 50–2301.01, such as the moving violations involved in this case. An "infraction" subject to this section of the Code is defined as "any conduct subject to administrative adjudication under the provisions of this chapter and with respect to which the [Attorney General] does not commence a proceeding in the Superior Court of the District of Columbia." D.C.Code § 50–2301.02(4). The statute defines "operator" and "owner" as follows:

(6) The term "operator" means:

(A) Any person, corporation, firm, agency, association, organization, federal, state or local governmental agency in the business of renting or leasing vehicles to be used or operated in the District;

(B) An owner who operates his own vehicle; or

(C) A person who operates a vehicle owned by another.

(7) The term "owner" means:

(A) Any person, corporation, firm, agency, association, organization, federal, state or local governmental agency or other authority or other entity having the property of or title to a vehicle used or operated in the District; or

(B) Any registrant of a vehicle used or operated in the District; or

(C) Any person, corporation, firm, agency, association, organization, federal, state or local government agency or authority or other entity in the business of renting or leasing vehicles to be used or operated in the District.

*Id.* § 50–2301.02(6)–(7).

Applying these statutes to moving violations, Subchapter II of this code chapter specifies that "[n]otwithstanding any other provision of law, all violations of statutes, regulations, executive orders or rules relating to the operation of any vehicle in the District ... shall be processed and adjudicated pursuant to the provisions of this subchapter...." D.C.Code § 50–2302.01. For any such alleged traffic violation, Subchapter II provides for a hearing:

(a) Each hearing for the adjudication of a traffic infraction pursuant to this subchapter shall be held before a hearing examiner in accordance with Chapter IX of Title 18 of the District of Columbia Municipal Regulations except as provided by this chapter. The burden of proof shall be on the District and no infraction shall be established except by clear and convincing evidence.

(b) If a person to whom a notice of infraction has been issued fails to appear at a hearing for which he or she received notice, the hearing examiner may enter a default judgment....

. . . .

(d) After due consideration of the evidence and arguments presented, the hearing examiner shall determine whether the infraction has been established. Where the infraction is not established, an order dismissing the charge shall be entered. Where a determination is made that an infraction has been established or where an answer admitting the commission of the infraction or admitting the commission of the infraction with explanation has been received, an appropriate order shall be entered in the Department's records.

(e) An order, entered pursuant to a determination that an infraction has been established or pursuant to the receipt of an answer admitting the infraction or admitting the infraction with explanation, shall be civil in nature but shall be treated as an adjudication that an infraction has been committed....

*Id.* § 50–2302.06. An appeal from an adverse decision by the examiner may be made to an Appeals Board, D.C.Code § 50–2304.02, and ultimately to the Superior Court, D.C.Code § 50–2304.05. *See generally Kovach v. District of Columbia*, 805 A.2d 957, 961–63 (D.C.2002) (describing procedures for motorists challenging traffic tickets).

**B. *District Regulations Governing Issuance and Adjudication of Notices of Infraction***

Further procedural protections are established through District regulations. The regulations require certain identifying information to be included in any Notice of Infraction ("ticket"). 18 DCMR § 3000.1 (2006).[1] The regulations also delineate the

---

**1.** "The Notice of Infraction, also referred to as a ticket, shall be in the form prescribed by the Director and shall contain the type of registration; the registration plate number; the jurisdiction of registration; a description of the vehicle; a general statement of the

rules of evidence applicable to any administrative hearing on traffic violations:

3012.1 The burden of proof shall be on the District.

3012.2 The standards of proof established by the D.C. Traffic Adjudication Act are the following:

(a) Clear and convincing evidence in cases of moving violations; and

(b) Preponderance of the evidence in cases of parking violations.

3012.3 All testimony shall be given under oath or affirmation administered by the hearing examiner.

3012.4 The respondent shall have the right to present witnesses, to conduct examination and cross examination, and to introduce documentary evidence.

3012.5 The hearing examiner may require production of evidence.

3012.6 The Notice of Infraction shall constitute prima facie evidence of the statements contained in the notice and shall be a record in the ordinary course of business.

*Id.* at § 3012.

### C. *Automated Traffic Enforcement System ("ATE System")*

### 1. D.C.Code Title 50, Chapter 22, Subchapter V: Automated Traffic Enforcement

There is no dispute between the parties that, in all ways relevant to this litigation, moving violations resulting from use of the ATE System are subject to the statutory scheme as set out above.[2] D.C.Code § 50–2209.01 expressly authorizes use of the ATE System and establishes the weight given to evidence obtained through it:

(a) The Mayor is authorized to use an automated traffic enforcement system to detect moving infractions. Violations detected by an automated traffic enforcement system shall constitute moving violations. Proof of an infraction may be evidenced by information obtained through the use of an automated traffic enforcement system. For the purposes of this subchapter, the term "automated traffic enforcement system" means equipment that takes a film or digital camera-based photograph which is linked with a violation detection system that synchronizes the taking of a photograph with the occurrence of a traffic infraction.

(b) Recorded images taken by an automated traffic enforcement system are prima facie evidence of an infraction and may be submitted without authentication.

*Id.* Section 50–2209.02 describes liability, limitation of liability, and due process rights afforded to those vehicle owners who have been charged with a moving violation on the basis of ATE System evidence:

(a) The owner of a vehicle issued a notice of infraction shall be liable for payment of the fine assessed for the infraction, unless the owner can furnish evidence that the vehicle was, at the time of the infraction, in the custody, care, or control of another person. In the event that the registered owner claims that the vehicle was in the custody, care, or control of another person, the registered owner of the vehicle shall provide evidence in a sworn affidavit,

violation alleged; the date, time, and place of the occurrence. . . ." 18 DCMR § 3000.1.

**2.** One exception is the assessment of "points." Although District regulations permit a hearing examiner to assess points against a driver found liable for certain moving violations, the regulations expressly exclude those traffic convictions obtained through use of the ATE System. *See* 18 DCMR § 303.1.

under penalty of perjury, setting forth the name, drivers license number, and address of the person who leased, rented, or otherwise had care, custody, or control of the vehicle. . . .

(b) When a violation is detected by an automated traffic enforcement system, the Mayor shall mail a summons and a notice of infraction to the name and address of the registered owner of the vehicle on file with the Bureau of Motor Vehicle Services or the appropriate state motor vehicle agency. The notice shall include the date, time, and location of the violation, the type of violation detected, the license plate number, and state of issuance of the vehicle detected, and a copy of the photo or digitized image of the violation.

(c) An owner or operator who receives a citation may request a hearing which shall be adjudicated pursuant to subchapter I of Chapter 23 of this title.

(d) The owner or operator of a vehicle shall not be presumed liable for violations in the vehicle recorded by an automated traffic enforcement system when yielding the right of way to an emergency vehicle, when the vehicle or tags have been reported stolen prior to the citation, when part of a funeral procession, or at the direction of a law enforcement officer.

*Id.* Finally, D.C.Code § 50–2209.03 permits the District to engage a private contractor to handle ministerial functions of operating the ATE System:

The Mayor may enter an agreement with a private entity to obtain relevant records regarding registration information or to perform tasks associated with the use of an automated traffic enforcement system, including, but not limited to, the operation, maintenance, administration or mailing of notices of violations. *Id.*

### 2. Standard Language of Tickets Issued by the District in ATE System Cases

Once the ATE System receives information that a vehicle has violated either District speeding or red-yellow light laws, a ticket is issued to the vehicle's owner, complete with the statutorily-required information. *See* D.C.Code § 50–2209.02(b); 18 DCMR § 3000.1. The boilerplate language on the front of the ticket is as follows:

Your vehicle was photographed violating District of Columbia Traffic Regulations on the date and time listed below. Under District law, the registered owner of a vehicle is liable for payment of the fine for violations recorded using an automated traffic enforcement system, unless the vehicle was not in the custody of the owner at the time of the infraction. **POINTS WILL NOT BE ASSESSED AGAINST THE REGISTERED OWNER OR THE DESIGNATED DRIVER FOR THIS VIOLATION.**

On the back of this notice you will find detailed information regarding payment, ticket adjudication, and assignment of responsibility.

. . . .

Your answer to this notice of infraction must be submitted by the payment due date listed below.

Failure to pay the fine or otherwise answer in the manner and time required is an admission of liability. This will result in additional penalties and the loss of your right to a hearing. In addition, your driving privileges may be suspended and your home state may place a hold on the renewal of your vehicle registration. For vehicles registered in the

District of Columbia, the District Department of Motor Vehicles will place a hold on the renewal of the vehicle registration as long as the fine and penalty are unpaid.

The back of the District's ticket explains how the automated system works, and provides an answer form. The owner is offered two basic alternatives: to admit or deny the infraction. If the owner denies the infraction, s/he may either request (1) a hearing, (2) mail adjudication, or (3) outright dismissal of the ticket, on the basis of the vehicle having been "stolen prior to the issuance of the citation," or that the "vehicle was not in my custody, care, or control at the time of the infraction." If the owner wishes to claim that s/he was not the driver, s/he must complete the very bottom portion of the ticket, submitting a notarized certification with the name and address of the "actual driver."

If the registered owner fails to respond to the ticket within thirty days of its issuance, the District sends a "Notice of Deemed Admission." This notice states:

Your vehicle was photographed violating District of Columbia Traffic Regulations on the date and time listed above. Under District law, the registered owner of a vehicle is liable for payment of the fine assessed for violations recorded using an automated traffic enforcement system. **This includes rental, leased, and fleet vehicles.** As the registered owner of the vehicle with the tag listed above, you were mailed a notice of infraction for this offense.

**Our records show that you failed to answer the initial Notice of Infraction for this violation within 30 calendar days from issuance as required by law.** Under District law, you are deemed to have admitted this violation. Therefore, a penalty equal to the original fine was added to the total amount due. You

may not request a hearing on this infraction.

**You must pay this fine and penalty within ten days or your home state Department of Motor Vehicles will be notified of your failure to answer this violation. Your state may also place a registration hold on your vehicle registration.**

## II. The Appellants

### A. *Emelike U. Agomo*

Agomo is the registered owner of a vehicle with the Texas license plate G36–NVZ. Between November 10, 2001 and March 16, 2002, the ATE System identified Agomo's car as speeding in the District at least eighteen different times. Tickets for each of the moving violations were issued to Agomo at his registered address in Texas. Each gave Agomo thirty days to respond, or else it deemed the moving violation admitted.

On July 17, 2002, a hearing was held on six of the eighteen citations issued to Agomo. Although not personally present for the hearing, Agomo was represented by counsel who made the following argument on his behalf:

[Agomo's] counsel denies the infraction and alleges the following: [Agomo] lives in Houston, TX. He received notices too late to schedule a hearing. He got a list of the infractions at once. He wasn't driving the vehicle but he doesn't know who was driving the vehicle. The Constitution doesn't allow a presumption of guilt which is what the Government is doing in this instance by making [Agomo] identify the driver or be found guilty of the violation. One of three people could be driving the vehicle [sic].

The hearing examiner determined that Agomo was liable for two of the six tickets,

based on the fact that he was the registered owner of the vehicle.

## B. *Auto Ward, Inc.*

Auto Ward is a registered District of Columbia corporation which leases automobiles to taxicab drivers in the District. Auto Ward was issued over 100 tickets between February 23, 2000 and October 19, 2002; these tickets included both speeding and red-yellow light violations. On November 7, 2002, Muhammad Saleem, President of Auto Ward, attempted to renew one of his fleet vehicle's registration with the District; however, he was told that any vehicle registration renewals would be "blocked" until the company paid its outstanding fines. The District supplied Saleem with a list of fifty-seven outstanding tickets.[3] At the time the trial court granted the District's motion for summary judgment in this case, Auto Ward's tickets were at various stages of the administrative process, but it had been found liable on at least some of them.

## Procedural History

## I. The Complaint

The amended complaint asserted that Agomo had been charged with at least eleven different speeding violations[4] which, at the time of complaint's filing, were at various stages of the administrative process. Auto Ward had been charged with at least fifty-seven moving violations, consisting of both speeding and red-yellow light violations, and was found liable on at least some of them. However, the complaint alleged that some of those tickets were "adjudicated ... without pro-

viding notice and an opportunity to be heard on the charges."

The amended complaint specified two causes of action, both as civil rights due process violations under 42 U.S.C. § 1983: first, on the basis of the "presumption of guilt" of the vehicle owner inherent in the ATE System, and second, on the basis of the compensation arrangement between the District and ACS (the private contractor charged with processing ATE System tickets).

## II. The Trial Court Proceedings

## A. *The Parties' Opposing Motions*

After appellants amended their complaint to alter plaintiffs and delineate two separate claims, the District filed a motion to dismiss the amended complaint on February 14, 2003. At the outset, the motion described the impact of the ATE System on traffic safety:

Since its inauguration in August of 1999, the [ATE System] has proven a significant element in improving public safety in the District. Traffic violations at intersections with cameras have dropped more than 60 percent, and red light running fatalities were reduced from 16 to 2 in the first two years of operations. With the implementation of photo radar in high-risk areas in August of 2001, the percentage of motorists speeding has dropped by more than 65 percent.

The motion described the process through which raw ATE System data was translated into charges of a moving violation:

---

3. In a sworn affidavit dated March 3, 2003, Saleem contends that he filed the requisite affidavits with the District identifying the drivers in each of the fifty-seven outstanding notices, although he kept no copies of those filings, nor could he produce the standard

acknowledgment letters the District sends upon receipt of such affidavits.

4. It was later determined that Agomo had been charged with at least eighteen different speeding violations.

[W]here an image is recorded by system cameras—and unless the image is indecipherable (e.g., no clear image of the license plate) or patently unusable (e.g., in speeding photos, more than one vehicle in the "detection area")—a "draft" [ticket] is prepared by ACS personnel for review by an MPD [Metropolitan Police Department] officer. An MPD officer reviews each "draft" [ticket], and decides whether the [ticket] should be issued to the vehicle owner.

In support of this description, the District attached declarations by MPD Captain Kevin Keegan[5] and Matthew Hopwood, a Senior Manager at ACS.

Hopwood's declaration confirmed the manner in which ACS administered the ATE System, asserting that "ACS makes no determinations concerning issuance of [tickets] to vehicle owners." On the basis of the MPD officer's determination, ACS mails a ticket. Once a ticket is returned, ACS is responsible for processing the payment and sorting through "[a]ll correspondence not related to payment." In the event that a ticket recipient requests a hearing or mail adjudication:

> ... ACS transmits the documents submitted by the owner, together with a copy of the Notice and related logs, to DMV [Department of Motor Vehicles] for consideration and disposition. Where a hearing is requested, ACS also schedules a hearing date, based on time availabilities furnished by DMV to ACS, and advises the vehicle owner of the time and location of the hearing by mail.
> ... In either adjudicative event, if the ticket is dismissed, that determination will be entered into the database by the responsible DMV hearing examiner and no further action is taken. On the other hand, if the owner is found liable, the

responsible DMV hearing examiner will enter that result in the database, and the owner will be so advised. ACS does not participate in any adjudicating activities.

> ... Finally, if the vehicle owner timely returns the Notice and properly identifies another individual as the driver of the vehicle at the time of the violation, ACS enters that information into the [ATE System] database, with two consequences: (a) the vehicle owner is noted as having identified a 3rd party as responsible and is no longer to be considered liable for the violation; and (b) a new [ticket] is issued to the other individual identified as the driver. In the latter case, procedures are then followed in the same fashion as if an initial [ticket] had been issued, except that the identified driver is not provided the option of designating someone else as responsible.

As to the merits of the claim that the ATE System violated appellants' due process rights, the District's motion to dismiss asserted that the statutory scheme denied the appellants neither proper notice nor a pre-deprivation opportunity to be heard, as the appellants received tickets prior to any determination of liability, which permitted them to request a hearing to contest the alleged violation. Further, the District claimed, the statute did not create an "irrebuttable presumption of liability" with "conclusive effect on adjudicative determinations by DMV hearing examiners." Finally, the motion contended that the procedural protections inherent in the ATE System were proper under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

---

**5.** Captain Keegan's declaration is not included in the appellate record.

The District also disputed the appellants' second claim that the compensation arrangement between ACS and the District violated due process. The appellant's claim was based, in large part, on an assertion that ACS "examines, and on a substantial basis adjudges the validity and content of" tickets. For a period up to April of 2002, ACS was compensated on a per-citation basis. Appellants asserted that these factors combined to render the process "impermissibly partial towards a verdict against automobile owners." The District conceded that from March 1999–March 2002, ACS received a fee per citation ($29, later raised to $32); however, since March of 2002, ACS has received a fixed monthly fee of approximately $190,000 per month. However, the District asserted that ACS performs only ministerial, rather than adjudicative functions in the administration of the ATE System. "ACS has no role in the determinations of liability." Therefore, the District argued, unlike the precedents from criminal law cited by appellants, there was no danger of a tainted process.

On March 27, 2003, the appellants filed a cross-motion for summary judgment on count one of their amended complaint, describing the District's ATE System as "the most glaringly unconstitutional program for automated policing of traffic in the nation."

## B. *The Trial Court Ruling*

The trial court granted the District's motion for summary judgment [6] in a memorandum order and judgment issued on June 12, 2003. The trial court held that under the balancing test in *Mathews v. Eldridge,*

---

**6.** Because the court considered matters outside the complaint, it treated the Motion to Dismiss the Amended Complaint filed by the District of Columbia as one for summary

the plaintiffs' due process rights were not violated based on failure of notice or deprivation of the opportunity to be heard. It is undisputed that (a) the plaintiffs received notices of infraction in advance of any determinations of liability, (b) that the notices contained an accurate identification of the vehicle, and (c) a clear description of the asserted violation....

Neither plaintiff states in their amended complaint that they ever demanded a hearing and were denied. The plaintiffs were fully informed as to the nature of their infraction and the manner in which they could obtain a fair hearing.

The court further found that, although cameras operated by the Government created a privacy issue, those concerns were outweighed by "the legitimate concerns for safety on our public streets," and that the District of Columbia was acting within its power "when it created the rule of evidence stated in D.C.Code § 50–2209.01(b) and created the presumption that the owner of a vehicle was its driver at the time of the infraction."

## Analysis

■■■ When reviewing a trial court's order granting summary judgment, this court conducts an independent review of the record and will affirm the order if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983) (citations omitted). We review the record in the light most favorable to the non-moving party, and summary judgment is properly granted if the record would not permit an impartial jury, acting reasonably, to return a verdict in the non-

judgment, *American Ins. Co. v. Smith,* 472 A.2d 872, 874 (D.C.1984); thus hereinafter we shall refer to it as the District's "motion for summary judgment."

moving party's favor. *Poyner v. Loftus,* 694 A.2d 69, 70–71 (D.C.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The parties do not dispute any material facts relating to the first issue; that is, whether the procedures set forth in the ATE System's statutory scheme violate due process.

## I. Statutory ATE System Due Process Claim

■ In evaluating a due process claim brought under § 1983, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Supreme Court has set forth a balancing test to determine whether a state's due process procedures are adequate:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893.

We begin by noting that appellants are not challenging the trial judge's ruling that the basic procedures for contesting a traffic citation under the Act satisfy the requirements of due process.[7] Appellants instead focus their appeal on the constitutionality of the liability system created by statute in D.C.Code § 50–2209.02. Appellants contend that the trial judge incorrectly interpreted § 50–2209.02 as creating a rebuttable presumption that the owner of the car was the driver. Appellants' first argument is that the language of D.C.Code § 50–2209.02 instead creates a statutory presumption of liability, whereby the identity of the driver is irrelevant, and that this system therefore violates due process and conflicts with the requirements in other sections of the traffic code that require the identity of the driver to be proved before liability can be assessed. Because this presents a question of statutory construction, we review it de novo. *Robert Siegel, Inc. v. District of Columbia,* 892 A.2d 387, 393 (D.C.2006); *Richardson v. Easterling,* 878 A.2d 1212, 1216 (D.C.2005).

■ "As always, our first task when called upon to choose between two conflicting interpretations of a statutory provision is to examine the statute itself, so as to determine whether its language is ambiguous." *District of Columbia v. Gallagher,* 734 A.2d 1087, 1090 (D.C.1999). We find the meaning of the plain language clear, therefore we need look no further. *See id.*

7. The trial judge found that the ATE System: ...passes the *Mathews* test because (a) the private interest involved is small in the respect that a red-light violation carries only a $75 civil penalty with no points; (b) regarding the risk of an erroneous deprivation, the amended complaint identifies no concern that cannot be addressed through the DMV's quasi-judicial administrative hearing process and subsequent judicial review provided by statute; and (c) the District's interest in deterring the life-threatening activity of red light running and speeding is significant. Financial and administrative burdens of alternatives to [the ATE System], such as the plaintiff's suggestion of manning each dangerous intersection with a police officer, is simply not feasible in this time of heightened security and does not sway the court to find that extra procedural protections are necessary. Therefore, the District of Columbia's [automated traffic enforcement] program is within the flexible concept of due process that the Supreme Court has embraced.

at 1091 (citing cases). D.C.Code § 50–2209.02 states that "[t]he owner of a vehicle issued a notice of infraction shall be liable for payment of the fine assessed for the infraction, unless the owner can furnish evidence that the vehicle was, at the time of the infraction, in the custody, care, or control of another person." This language creates a rebuttable presumption that the car used in the infraction was in the custody, care, or control of the registered owner, and it imposes vicarious liability on that basis. Vicarious liability, in and of itself, is merely a legal concept used to transfer liability from an agent to a principal. *See Hayes v. Chartered Health Plan,* 360 F.Supp.2d 84, 90 (D.D.C.2004). If the factual predicate is established, *i.e.,* that the car was in the care, custody, or control of the registered owner, then liability is imposed on the owner without further inquiry into who specifically may have been driving.

It is instructive to compare the instant statute with D.C.Code § 50–1301.08, the statute that holds the owner of an automobile liable for accidents committed by another person if the person was operating the vehicle with the owner's consent. This statute also creates a system of vicarious liability, again through the use of a rebuttable presumption. *See Athridge v. Rivas,* 354 U.S.App.D.C. 105, 106, 312 F.3d 474, 475 (2002) (describing plaintiff as "seek[ing] to impose vicarious liability on the appellees" through the statute). "[T]he purpose of [§ 50–1301.08] was to place the liability upon the person in a position immediately to allow or prevent the use of the vehicle and to do so by giving a lawful and effective consent or prohibition to its operation by others." *Curtis v. Cuff,* 537 A.2d 1072, 1074 (D.C. 1987) (quoting *Mason v. Automobile Finance Co.,* 73 App.D.C. 284, 287, 121 F.2d 32, 35 (1941)). The rebuttable presumption under this statute is that "proof of

the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner." D.C.Code § 50–1301.08. *See also U–Haul Co. v. State Farm Mut. Auto. Ins. Co.,* 616 A.2d 1264, 1265 (D.C.1992) ("The Motor Vehicle Safety Responsibility Act creates a rebuttable presumption that any operator of a vehicle has the consent of its owner and is therefore the owner's agent"); *Curtis,* 537 A.2d at 1074 ("Once the defendant's ownership has been established, the statute creates a presumption of agency which places the burden of proof as to the question of consent upon the defendant-owner.") In other words, there is a rebuttable presumption that any person driving a car does so with the consent of the registered owner, and unless the owner comes forward with evidence to rebut that presumption, liability will be vicariously imposed. *See, e.g., Athridge v. Iglesias,* 382 F.Supp.2d 42, 47 (D.D.C.2005) (clarifying that D.C.Code § 50–1301.08 does not create *strict* vicarious liability, instead deeming the legal concept "liability turning on the fulfillment of a condition"). Similarly, in D.C.Code § 50–2209.02, there is a rebuttable presumption that the vehicle was in the custody, care, or control of the registered owner, and unless the owner rebuts that presumption, liability is vicariously imposed.

Appellants' argument that this liability system undermines the clear and convincing standard of proof required by D.C.Code § 50–2302.06(a) is misplaced. The statute provides that "no *infraction* shall be established except by clear and convincing evidence." *Id.* (emphasis added). Appellants confuse proof of the violation with the imposition of liability. The statutory mechanism for assessing liability once an infraction has been established in no way affects the requirement that the

District prove the commission of a traffic infraction by clear and convincing evidence. As conceded by the appellants in this case, the ATE System accurately captures and records traffic violations; thus there is no constitutional infirmity in the code provision that declares recorded images to be prima facie evidence of an infraction. *See* D.C.Code § 50–2209.01(b).

 Having determined that the statute at issue imposes vicarious liability through the use of a rebuttable presumption, we turn to the question of whether such a system violates the constitutional protections of due process, and we conclude that it does not. "[A] strong presumption of constitutionality inheres in legislative enactments, and there is a heavy burden on a party who seeks to overturn one." *In re W.T.L.*, 656 A.2d 1123, 1131 (D.C.1995) (citing cases). The Supreme Court has long held that on their face, systems of vicarious liability that impose civil liability are not contrary to the notions of due process. "[T]he extension of the doctrine of liability without fault to new situations to attain a permissible legislative object is not so novel in the law or so shocking 'to reason or to conscience' as to afford in itself any ground for the contention that it denies due process of law." *Louis Pizitz Dry Goods Co. v. Yeldell*, 274 U.S. 112, 115, 47 S.Ct. 509, 71 L.Ed. 952 (1927). "It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it." *Van Oster v. Kansas*, 272 U.S. 465, 467, 47 S.Ct. 133, 71 L.Ed. 354 (1926) (upholding constitutionality of statute that declared any vehi-

cle used in the state to transport liquor a common nuisance and subject to forfeiture). As long as the legislature "adopt[s] a device consonant with recognized principles" to "effect a purpose clearly within its power" there is no violation of due process. *Id.* at 468, 47 S.Ct. 133. It is within the legislature's power to regulate traffic violations and ensure the safety of its streets; thus on its face, a statute imposing vicarious liability on automobile owners does not offend due process. *See Smith v. District of Columbia*, 436 A.2d 53, 58 (D.C.1981) ("The regulation of highway speed is one of the most pressing obligations of a state."). *Cf. id.* at 60 ("The causal link between prohibiting the use of radar detectors and protecting the public safety . . . is sufficient to support the reasonableness of the regulation on due process grounds.").

We next address whether the rebuttable presumption created by the statute violates due process, as appellant contends, by impermissibly "shifting the burden of proof" to the defendant. We pause in our analysis to note that much of appellant's brief focuses on the "presumptions of innocence" that are applicable in criminal proceedings. It is clear, however, that violations under the ATE System impose only civil liability in the form of a modest fine,[8] and thus analysis under the rubrics of criminal law is inappropriate. *See District of Columbia v. Hudson*, 404 A.2d 175, 179 n. 6 (D.C.1979) (en banc) ("presumption of innocence in a criminal prosecution has no place in a civil proceeding . . ."). *Cf. Medina v. California*, 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("*Mathews* balancing test does not provide the appropriate framework for assessing the

---

**8.** *See* D.C.Code § 50–2302.06(e) (order establishing traffic infraction shall be "civil in nature"); D.C.Code § 50–2302.06(f) (sanction is "civil fine"); D.C.Code § 50–2301.05 (providing for "civil fines" and monetary penalties);

*Purcell v. United States*, 594 A.2d 527, 529 (D.C.1991) ("Traffic Adjudication Act . . . converted almost all District of Columbia traffic offenses from crimes to civil violations").

validity of state procedural rules which ... are part of the criminal process."). As the trial court noted, presumption of liability is not a novel concept in civil cases.

> Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue, is but to enact a rule of evidence, and quite within the general power of government.... That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate.

*Mobile, Jackson & Kansas City R.R. Co. v. Turnipseed,* 219 U.S. 35, 43, 31 S.Ct. 136, 55 L.Ed. 78 (1910). It is entirely rational to presume that a vehicle is in the custody, care, or control of its registered owner. *Cf. Jones v. Halun,* 111 U.S.App.D.C. 340, 341, 296 F.2d 597, 598 (1961) (stating that because the driver of a car has the owner's consent more often than not, there is a rational basis for the presumption of consent). Moreover, the Supreme Court has stated that a presumption is valid as long as it does not preclude a defense, *Turnipseed,* 219 U.S. at 43, 31 S.Ct. 136, rand it is clear the instant statute provides ample leeway for the defendant to rebut the presumption by identifying a third-party driver.[9] That the legislature has chosen to require specified means of rebutting the presumption does not invalidate it; as one court has succinctly stated, "[t]he public has a right to expect that a vehicle owner who voluntarily surrenders control of his vehicle to another is in the best position both to know the identity and competence of the person to whom he entrusts the vehicle...." *Chicago v. Hertz Commercial Leasing Corp.,* 71 Ill.2d 333, 17 Ill.Dec. 1, 375 N.E.2d 1285, 1291, *cert. denied,* 439 U.S. 929, 99 S.Ct. 315, 58 L.Ed.2d 322 (1978).[10]

## II. Compensation Arrangement with ACS

■ Appellants' second argument is that the large sums of money involved in

---

**9.** Although it is true that "[s]tatutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments," *Vlandis v. Kline,* 412 U.S. 441, 446, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), there is some suggestion that even an irrebuttable presumption may not violate due process as long as there is a strong, rational connection between the actual facts and the presumption. *Compare Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 22–24, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (upholding irrebuttable statutory presumption allocating costs of compensation for Black Lung Disease victims) *with United States Dep't of Agric. v. Murry,* 413 U.S. 508, 514, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (holding irrebuttable presumption invalid under due process because the presumption often operated "contrary to fact").

**10.** To the extent that appellants are challenging the regulation based on the possibility that a situation may arise in which a motorist has a "truthful alibi" under circumstances that might justify his lack of knowledge about who was driving his car, such as a motorist being in the hospital at the time of the violation, or a car stolen and photographed before owner became aware of theft, we need not address those claims. We have made clear that "a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights .... if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." *In re W.T.L.,* 656 A.2d at 1132 (citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 154–55, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)).

the administration of the ATE System created a biased adjudication process. They allege that administration of the ATE System by ACS, a private company, violates due process because ACS's financial profit from the fines imposed by the system creates a tainted tribunal.[11] They further argue that the District's contractual financial obligation to ACS "imperil[s] the fundamental fairness" of the adjudicatory process by creating a financial incentive for the District to enter determinations of liability against them in order to generate enough revenue to fulfill the monthly contract amount guaranteed to ACS. At minimum, appellants state that there are disputed issues of material fact that warrant reversal of the grant of summary judgment, especially, they argue, in light of the fact that the trial court articulated no reasons for its ruling on this issue.[12]

■ Our review of the record, viewing it in the light most favorable to the appellants, reveals that the following facts are undisputed: if a vehicle commits an infraction by speeding or going through a red light, ATE System cameras take a picture of the car's license plate. The picture is reviewed for certain defects, and ACS issues and mails a ticket to the registered owner of the vehicle. The ticket states that under District law the registered owner is liable, and then provides instructions on how to admit or deny the infraction. Appellants made clear that they are not challenging the accuracy of the ATE System cameras; thus for the purposes of this case we assume that all citations issued accurately captured a violation of traffic laws. The parties dispute whether ACS performs any adjudicatory function, and appellants argue that this dispute should warrant reversal. However, the parties do not dispute the procedures that are followed by ACS, and whether those actions constitute an imposition of liability is a question of law, not a dispute of fact. A "mixed question" of law and fact exists where "the historical facts are admitted or established, the rule of law is undisputed, and the issue is ... [how] the rule of law [is] applied to the established facts...." *Davis v. United States,* 564 A.2d 31, 35 (D.C.1989) (en banc) (citing *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). *Cf. Southern Ry. Co. v. Taylor,* 57 App.D.C. 21, 26, 16 F.2d 517, 522 (1926) ("whether certain facts do or do not constitute a ground of liability is in its nature a question of law") (quoting *Beutler v. Grand Trunk Junction Ry. Co.,* 224 U.S. 85, 89, 32 S.Ct. 402, 56 L.Ed. 679 (1912)).

**11.** The parties agree that from March 1999 until February 2002, ACS received compensation based on the number of citations that were paid. Beginning in March 2002, ACS received a set amount of compensation under a monthly contract with the District. Appellants do not rely on this distinction and argue that their due process rights were violated under either compensation method.

**12.** The mere fact that the trial court granted the District's motion for summary judgment without articulating its reasons for doing so on Count 2 does not preclude us from ruling on it. The cases cited by appellants in support of a remand all involved situations were the reviewing court found disputed issues of material fact. *See Wilson v. Halley Gardens Assocs.,* 738 A.2d 265, 266 (D.C.1999) (summary judgment granted prematurely because of genuine issue of material fact); *Isen v. Calvert Corp.,* 126 U.S.App.D.C. 349, 353, 379 F.2d 126, 130 (1967) (record discloses "genuine issues of material fact"); *Weade v. Trailways of New England, Inc.,* 117 U.S.App.D.C. 73, 325 F.2d 1000 (1963) (record raises substantial issues of fact). Although appellants dispute minor issues such as the veracity of the ACS Ticket Detail Report, we are satisfied that none of these facts is material to the issue of whether the general compensation arrangement for administration of the ATE System violates due process.

ACS issues the notice of infraction, which indeed states that the owner of the vehicle is "liable"; however, in doing so ACS has not performed any adjudicatory function. It is by operation of the statutory scheme that liability is imposed, not by the act of ACS issuing the citation. ACS merely makes factual determinations about violations of speed or red-yellow light laws, and those determinations are reviewed by an MPD officer who decides whether a ticket should be issued. Once ACS makes that factual determination, the accuracy of which is not being challenged, the predicate has been established, and by operation of the statute, vicarious liability is imposed unless the factual predicate is rebutted. As discussed in section I, *supra*, this mechanism for imposing liability does not violate due process.

Having determined that, as a matter of law, ACS does not make determinations of liability, any financial compensation received by ACS thus has no effect on the adjudicatory process. Moreover, appellants do not dispute that all citations contain information on the process for challenging liability, either through live hearings or submission of affidavits. That most people choose to admit liability and pay the fine without availing themselves of this process does not change the fact that ultimate liability in a contested case is imposed only after a hearing examiner or judge has reviewed evidence of the violation as well as any challenges to its validity or other statutorily-prescribed defenses.

Appellants' argument that the District's budgetary obligation to ACS taints the impartiality of its adjudicatory tribunals likewise fails. The cases relied on by appellants indicate that impartiality is affected where there is a direct link between the judge's behavior and the money received. *See Tumey v. Ohio*, 273 U.S. 510, 523, 47

S.Ct. 437, 71 L.Ed. 749 (1927) (holding that due process is violated where judge has "direct, personal, substantial pecuniary interest" in convicting). In *Ward v. Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), even though the mayor did not receive direct financial compensation from convictions, the Supreme Court found that mayor's executive responsibilities for village finances may have made him "partisan to maintain the high level of [revenue] contribution from the mayor's court," and thus it was a violation of due process for him to personally make judgments of liability for traffic violations. *Id.* at 60, 93 S.Ct. 80. Here, however, the connection is too attenuated and overbroad. *Ward* instructs us that "the test is whether the … situation is one 'which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused….'" *Id.* (quoting *Tumey*, 273 U.S. at 532, 47 S.Ct. 437).

The hearing examiners and judges who make the ultimate liability determinations in ATE System cases have no direct connection to the Mayor of the District or its budget. Appellants' argument is tantamount to arguing that all judges employed by the District are biased in civil suits in which the District is a party, simply over concern that the District may fall into a budget deficit. Appellants have not suggested, nor is there any evidence, that the salaries of the individual hearing examiners or judges are contingent upon findings of liability, or that their salaries are directly affected in any way by the state of the District's budget. Unlike the city at issue in *Ward*, the judicial and executive functions in traffic adjudication in the District are entirely separate, and on the facts

before us there is no basis for questioning the impartiality of the tribunal.

## Conclusion

Because we conclude that there is no dispute of material fact, and having determined that neither the statutory mechanism for imposition of liability nor the compensation arrangement of the Automated Traffic Enforcement System violates due process, the grant of summary judgment for the District of Columbia on both counts is

*Affirmed.*