**James A. DeVITA, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 12–CV–893.

District of Columbia Court of Appeals.

Argued May 7, 2013.
Decided Sept. 5, 2013.

James A. DeVita, pro se.

Gregory M. Cumming, Assistant Attorney General, argued the case for appellee. Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Bradley A. Sarnell, Assistant Attorney General, were on the brief.

Before GLICKMAN and FISHER, Associate Judges, and RUIZ, Senior Judge.

FISHER, Associate Judge:

Appellant James DeVita claims the Superior Court wrongfully denied his application for leave to appeal an administrative adjudication finding him liable for speeding. He argues that the traffic hearing abridged his Fifth and Sixth Amendment rights because the adjudication was based exclusively on evidence provided by the Automated Traffic Enforcement System ("ATE System"). In the alternative, appellant asserts that, even if the penalty is civil, the administrative hearing provided by the Department of Motor Vehicles ("DMV") denied him due process of law. We conclude, as we have in the past, that ATE System penalties are civil in nature. We also hold that the administrative hearing satisfied the requirements of due process.

One comment by the hearing examiner—declaring that only two defenses were available to appellant—seems to reflect a misunderstanding of the statutes and regulations which implement the ATE System. On this record, however, we are satisfied that the statement did not affect the adjudication. We therefore affirm.

## I. Background

The Council of the District of Columbia passed the Traffic Adjudication Act ("TAA") of 1978 "to decriminalize and to provide for the administrative adjudication of certain [traffic] violations ... and thereby to establish a uniform and more expeditious system and continue to assure an equitable system for the disposition of traffic offenses." D.C.Code § 50–2301.01 (2001) (stating legislative purposes of the TAA); see District of Columbia v. Sullivan, 436 A.2d 364, 365 (D.C.1981). Traffic hearings were transferred from the Superior Court to the DMV's Adjudication Services, which employs hearing examiners to adjudicate traffic cases. D.C.Code § 50–2302.06 (2001). There is a right of administrative appeal to the Traffic Adjudication Appeals Board ("Board"). D.C.Code

§ 50–2304.02(a) (2001). A respondent may then seek judicial review "by application for the allowance of an appeal filed in the Superior Court ... within 30 days of the decision of the appeals board." D.C.Code § 50–2304.05 (2001).

In 1996, the Council authorized the use of an automated traffic enforcement system. These statutes were codified, D.C.Code §§ 50–2209.01–.03 (2001), and implemented by regulations. 18 DCMR § 1035 (2001 & 2010). D.C.Code 50–2209.01 (2001) provides:

(a) The Mayor is authorized to use an automated traffic enforcement system to detect moving infractions. Violations detected by an automated traffic enforcement system shall constitute moving violations. Proof of an infraction may be evidenced by information obtained through the use of an automated traffic enforcement system. For the purposes of this subchapter, the term "automated traffic enforcement system" means equipment that takes a film or digital camera-based photograph which is linked with a violation detection system that synchronizes the taking of a photograph with the occurrence of a traffic infraction.

(b) Recorded images taken by an automated traffic enforcement system are prima facie evidence of an infraction and may be submitted without authentication.[1]

"When a violation is detected by an automated traffic enforcement system, the Mayor shall mail a summons and a notice of infraction to the name and address of the registered owner of the vehicle on file with the [DMV]...." D.C.Code § 50–2209.02(b). Section 50–2209.02(a) "creates a rebuttable presumption that the car used in the infraction was in the custody, care, or control of the registered owner, and it imposes vicarious liability on that basis." *Agomo v. Fenty,* 916 A.2d 181, 192 (D.C. 2007).[2]

## II. Procedural Posture

Appellant was issued a $50 ticket when an ATE System photo radar device detected a vehicle registered to him speeding on January 29, 2010. At the hearing on September 24, 2010, as part of a general announcement, the examiner told those persons cited for speeding (including appellant) that they could raise only two defenses: that they "were [ (1) ] not operating the vehicle at the time the ticket was issued or [ (2) ] the vehicle or its tags were reported stolen prior to that violation." When his case was called, appellant denied the violation without invoking either one of those defenses, and then contested the constitutionality of the statutes governing ATE System cases. He neither presented nor proffered a factual defense. No witness testified for the government. The hearing examiner found appellant liable for speeding based on the fact that "[t]he radar unit was tested ... [and] was calibrated and it was functioning properly," adding that "[appellant's] Constitutional

---

1. This section was amended and expanded effective October 23, 2012; the language quoted above is that in effect at the time of appellant's infraction.

2. At the time of the infraction, subsection (a) read in part: "The owner of a vehicle issued a notice of infraction shall be liable for payment of the fine assessed for the infraction, unless the owner can furnish evidence that the vehicle was, at the time of the infraction, in the custody, care, or control of another person." Since that time, it has become harder to rebut the presumption of vicarious liability. The subsection currently provides: "Absent an intervening criminal or fraudulent act, the owner of a vehicle issued a notice of infraction shall be liable for payment of the fine assessed for the infraction." D.C.Code § 50–2209.02(a) (2001 & 2013 Supp.).

arguments are beyond the scope of this hearing and do not fall within the statutory exceptions as noted in the law."

The Traffic Adjudication Appeals Board affirmed, noting that "[a]ppellant did not produce any evidence at the hearing to suggest that his vehicle was not traveling at the rate of speed recorded on the government's automated enforcement equipment" and concluding that there was "substantial evidence to support a finding that appellant is liable for the infraction as charged." Citing *Agomo*, the Board also held "that the photo enforcement system does not violate constitutional due process guarantees."

Appellant then filed an application for leave to appeal the Board's decision to the Superior Court. Judge Bartnoff summarized appellant's various challenges to the adjudication, applied the proper standard of review, and denied the application, finding that appellant had not "made a sufficient showing under D.C.Code § 2–510(a)(3) to support setting aside the Board's decision."[3] The court noted in particular that appellant "produced no evidence that he was not traveling at the speed indicated by the ATE System or that he was not driving the vehicle at the time of the infraction."

### III. Standard of Review

■ "[A]lthough this is an appeal from a review of agency action by the Superior Court rather than a direct appeal to us, we review the administrative decision as if the appeal had been heard initially in this court." *Pub. Emp. Relations Bd. v.*

*Washington Teachers' Union Local 6*, 556 A.2d 206, 207 (D.C.1989). In the present context, D.C.Code § 50–2304.05 (2001) identifies the standard of judicial review: "Except to the extent that this chapter provides otherwise, the manner of and standards for appeals to the Superior Court of the District of Columbia shall be as set forth in § 2–510." This directive is addressed to the Superior Court, but our standard of review is no broader. *See Eagle Maint. Servs., Inc. v. District of Columbia Contract Appeals Bd.*, 893 A.2d 569, 572 n. 1 (D.C.2006) ("[W]hen reviewing the decision of the Superior Court in an agency-review case, this court essentially undertakes a *de novo* review of the decision of the agency, applying an identical scope of review.").[4]

■ As we have often articulated, we do not disturb an agency determination supported by substantial evidence unless it is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C.Code § 2–510(a)(3)(A) (2001). "Although our review of legal issues (such as interpretation of statutes and regulations) is *de novo*, we defer to the agency's interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the statutory language or purpose." *District of Columbia Office of Human Rights v. District of Columbia Dept. of Corr.*, 40 A.3d 917, 923 (D.C.2012).

### IV. *Agomo v. Fenty*

In *Agomo v. Fenty*, a suit brought under 42 U.S.C. § 1983 claiming due process and

---

3. D.C.Code § 2–510(a)(3) required the court to consider, among other things, whether the ruling at issue was "[c]ontrary to constitutional right, power, privilege, or immunity." *Id.* at (a)(3)(B). Judge Bartnoff addressed, and rejected, appellant's constitutional challenges, relying primarily upon our decision in *Agomo*.

4. The TAA does not mention a right of appeal beyond the Superior Court. However, we stated in *Sullivan* that "all cases under the TAA are subject to final review by this court." 436 A.2d at 368. The District of Columbia has not questioned our right to hear this matter.

civil rights violations, this court rejected a constitutional challenge to the District's ATE System. We are unable to affirm the Superior Court's decision based solely on *Agomo*, however, because our due process holding there focused on whether the principle of vicarious liability—making the owner of the speeding vehicle presumptively liable for the violation—was unconstitutional. *See id.* at 193 ("Having determined that the statute at issue imposes vicarious liability through the use of a rebuttable presumption, we turn to the question of whether such a system violates the constitutional protections of due process, and we conclude that it does not."). We were *not required* in *Agomo*, as we are today, to consider whether other aspects of DMV's administrative hearings deprive motorists of due process.

■ We did, however, address the nature of ATE System penalties in *Agomo*, announcing that "[i]t is clear ... that violations under the ATE System impose only civil liability in the form of a modest fine, and thus analysis under the rubrics of criminal law is inappropriate." 916 A.2d at 193 (footnote omitted). Appellant claims that this assertion is dictum, but we disagree. Although our analysis was brief, it was an essential step in determining "whether the rebuttable presumption created by the statute violates due process ... by impermissibly 'shifting the burden of proof' to the defendant." *Id.* Where the resolution of an issue is necessary to the court's decision, that discussion is not dictum. *See, e.g., Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1005 (D.C. 1994); *see also Legette v. United States*, 69 A.3d 373, 383 n. 22 (D.C.2013). Nevertheless, to resolve any doubt about the scope of our holding in *Agomo*, we reiterate that the sanctions imposed through use of the District's ATE System are civil in nature.

## V. Criminal Due Process Claim

■ To determine "[w]hether a particular punishment is criminal or civil," the Supreme Court has delineated a two-part test. *Hudson v. United States*, 522 U.S. 93, 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). "A court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Id.* at 99, 118 S.Ct. 488 (quoting *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Second, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (citation, brackets, and internal quotation marks omitted).

■ Applying this test to speeding violations proven with evidence from the District's ATE System clearly demonstrates that they are civil. "The stated purpose of the traffic adjudication statutes is 'to decriminalize and to provide for the administrative adjudication of certain violations.'" *Agomo*, 916 A.2d at 183 (quoting D.C.Code § 50–2301.01 (2001)). Moreover, the "statutory scheme" is not particularly punitive, "either in purpose or effect." *Hudson*, 522 U.S. at 99, 118 S.Ct. 488 (internal quotation marks omitted). We make that determination, in part, by following the seven "useful guideposts" provided by the Supreme Court:

(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter;* (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5)

whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson,* 522 U.S. at 99–100, 118 S.Ct. 488 (quotations omitted); *see also Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). "This list of considerations, while certainly neither exhaustive nor dispositive," *Ward,* 448 U.S. at 249, 100 S.Ct. 2636, demonstrates that the violations are properly characterized as civil. The traffic violations are not sanctioned by incarceration or any affirmative disability, only by a modest fine (see factor (1)); [5] monetary fines have not "historically been regarded as punishment" (factor 2); [6] as appellant concedes, "speed-

ing is not ordinarily a 'scienter' crime" (3); indeed, speeding is not a crime at all (5); [7] the TAA is rationally connected to the nonpunitive purpose of promoting public safety on the roadways (6); [8] and, finally, the statute does not excessively penalize offenders in light of legislative goals (7). *See* D.C.Code § 50–2209.02(a) (2001); § 50–2301.05 (2001). Thus, in even the most generous reading, only one factor (number 4) provides even partial support for appellant's position. [9] That is certainly not enough to provide "the clearest proof" necessary "to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 100, 118 S.Ct. 488 (internal quotation marks omitted).

We are not alone in characterizing these violations as civil in nature; other jurisdic-

**5.** No points were assessed against appellant's driving record. *See Agomo,* 916 A.2d at 185 n. 2 ("Although District regulations permit a hearing examiner to assess points against a driver found liable for certain moving violations, the regulations expressly exclude those traffic convictions obtained through use of the ATE System.") (citing 18 DCMR § 303.1). We do not reach appellant's argument that the fine at issue here "does 'involve' physical restraint since a speeding conviction will ordinarily be considered as a part of a defendant's prior record in making a sentencing decision on more serious traffic offenses." "Unfortunately for [appellant], we are called upon to decide only today's case, not tomorrow's. Our review is confined to the present burden...." *United States v. Harley,* 315 Fed. Appx. 437, 439, 440–42 (3rd Cir.2009) (applying *Hudson/Kennedy* factors to claim that present obligation to give DNA samples will enable government "to extract more and more personal, private information as science advances over time").

**6.** *See Hudson,* 522 U.S. at 104, 118 S.Ct. 488.

**7.** Speeding subjects violators, "except where the offense constitutes reckless driving, ... to a civil fine under the District of Columbia Traffic Adjudication Act (§ 50–2301.01 et seq.)." D.C.Code § 50–2201.04(d) (2001).

**8.** *See Smith v. Doe,* 538 U.S. 84, 102–03, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (public safety is a "legitimate nonpunitive purpose"). While appellant counters that "there is no reliable evidence which would demonstrate that the ATE system actually promotes public safety," our concern, as dictated by the Court, is whether the "nonpunitive purpose is a 'sham or mere pretext.' " *Id.* at 103, 123 S.Ct. 1140. Appellant's bare assertions do not convince us that the stated aim of promoting public safety is a mere pretext.

**9.** We agree with appellant that, through the imposition of a fine, the legislature seeks to deter speeding. However, as the Supreme Court cautioned in *Hudson* and reiterated in *Smith,* "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ... would severely undermine the Government's ability to engage in effective regulation." 538 U.S. at 102, 123 S.Ct. 1140 (internal quotation marks omitted); *see also City of Creve Coeur v. Nottebrok,* 356 S.W.3d 252, 257 (Mo.Ct.App.2011) ("the presence of the deterrent purpose of the sanction may serve civil as well as punitive goals"). Tellingly, there is no suggestion that the sanction is intended to exact "retribution," the other consideration embodied in the fourth *Hudson* factor.

tions with comparable statutes have reached the same conclusion. *See, e.g., Bevis v. City of New Orleans,* 686 F.3d 277, 280 (5th Cir.2012) (holding New Orleans' ATE ordinance imposed a civil penalty, and application of revised ordinance did not violate the Ex Post Facto Clause); *Holst v. City of Portland,* 152 Fed.Appx. 588, 589 (9th Cir.2005) (holding that "Portland's photo-radar procedures comport with Oregon law" because they provide due process for "civil sanctions"); *Mendenhall v. City of Akron,* 2008 WL 7484179, at *5 (N.D.Ohio Dec. 9, 2008) (holding Akron's ATE ordinance imposes a civil penalty and "satisfies due process concerns"); *Shavitz v. City of High Point,* 270 F.Supp.2d 702, 721 (M.D.N.C.2003) (court came to the "unavoidable conclusion that the statute and ordinance [imposing $50 fine for red light violation captured on High Point's ATE system] are civil in nature"); *State v. Dahl,* 336 Or. 481, 87 P.3d 650, 652 (2004) ("Although a traffic violation is an 'offense' within the meaning of the criminal code, it is not a crime. A [photo-radar] traffic violation is instead civil." (citations and footnote omitted)); *City of Creve Coeur v. Nottebrok,* 356 S.W.3d 252, 255, 260–61 (Mo.Ct.App.2011) (holding Creve Coeur's ATE ordinance for red light violations was a civil ordinance where it imposed a $100 fine and assessed no points against car owner's driver's license). Appellant has not cited any authority to the contrary.

Because traffic violations detected by the ATE System are civil in nature, appellant is not entitled to the Fifth and Sixth Amendment protections available to defendants in criminal prosecutions. *See In re*

*Amey,* 40 A.3d 902, 915–16 (D.C.2012) ("[T]he requirement that a witness's reliability be tested in a criminal trial according to the method prescribed by the Sixth Amendment yields in non-criminal proceedings to a more flexible approach of ensuring reliability as a matter of due process."); *In re D.B.,* 947 A.2d 443, 449 n. 11 (D.C.2008) ("[T]he Sixth Amendment right of confrontation ... applies only to criminal cases."). As we held in *Agomo,* "analysis under the rubrics of criminal law is inappropriate." 916 A.2d at 193.

## VI. Civil Due Process Claim

Appellant would like to see the automated traffic enforcement system dismantled and the government "revert to proving speeding violations the way it normally does by having a police officer come to court and testify." To that end, appellant asserts that he was denied due process of law, even if there is no criminal penalty. To assess whether the rules implementing the ATE System comport with procedural due process,[10] we apply the three-part framework formulated by the Supreme Court in *Mathews v. Eldridge,* whereby we consider,

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

**10.** Appellant also asserts that he was deprived of his right to substantive due process, but he makes no serious effort to meet that demanding test. *See Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ("The [Due Process] Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests."); *In re W.M.,* 851 A.2d 431, 447–51 (D.C.2004) (discussing the right to substantive due process).

424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Applying this balancing test leads us to conclude that ATE System hearings provide constitutionally sufficient due process.

The private interest at stake in ATE speeding cases is minimal; appellant received only a "modest fine" of fifty dollars, and no points were assessed against his license.[11] Second, the risk of an erroneous finding of liability is low because "the ATE System accurately captures and records traffic violations," *Agomo,* 916 A.2d at 193,[12] and the images and other data used in ATE System proceedings are only accepted as valid evidence if the photo radar unit was properly calibrated and certified to be in working order, 18 DCMR § 1035 (2010).

The risk of an erroneous finding is further minimized by the procedures afforded to individuals contesting a notice of infraction. D.C.Code § 50–2302.06(a) (2001), part of the TAA, provides that "[e]ach hearing for the adjudication of a traffic infraction pursuant to this subchapter shall be held before a hearing examiner in accordance with Chapter 10 of Title 18 of the District of Columbia Municipal Regulations except as provided by this chapter." *See also* D.C.Code § 50–2302.01 (2001). Title 18, Chapter 10 of the DCMR, entitled "Procedures for Administrative Hearings," provides a number of mechanisms by which a respondent can discover information to attack the accuracy of a photo radar device or otherwise contest the alleged violation, including applying for the issuance of subpoenas (18 DCMR § 1020 (2010)), seeking authorization to take depositions (18 DCMR § 1021 (2010)), and submitting written interrogatories (18 DCMR § 1022 (2010)). A respondent may present witnesses and documentary evidence. *See* 18 DCMR § 1031 (2010); 18 DCMR § 3012.4 (2010). Because respondents can employ these procedural safeguards, the value of any additional procedures, like requiring a police officer to testify at the hearing, would be minimal. *See Van Harken v. City of Chicago,* 103 F.3d 1346, 1352 (7th Cir.1997) ("[T]he benefits of requiring the police officer to appear at every hearing [relating to parking violations] are unlikely to exceed the costs.").

Contrary to appellant's contention, he was not made to bear the burden of proof at his hearing. *See* D.C.Code § 50–2302.06(a) (2001) ("The burden of proof shall be on the District and no infraction shall be established except by clear and convincing evidence."). While the statute authorizing the ATE System provides that "[r]ecorded images taken by an automated traffic enforcement system are prima facie evidence of an infraction and may be submitted without authentication," D.C.Code § 50–2209.01(b), respondent had an opportunity to rebut the government's prima facie case by offering evidence to the contrary. As we said in *Agomo,* "there is no constitutional infirmity in the code provision that declares recorded images to be prima facie evidence of an infraction." 916 A.2d at 193. In fact, the heightened burden of proof provides respondents with more protection against an erroneous decision than is true in the typical civil or administrative case. "While the prepon-

---

**11.** The record in this case does not include a copy of the ticket issued to appellant, but it does contain a "Notice of Unsatisfied Photo Enforcement Ticket" that specifies "[p]oints will not be assessed against the registered owner or the designated driver for this infraction."

**12.** *See also Idris v. City of Chicago,* 552 F.3d 564, 567 (7th Cir.2009) ("It is enough to say that photographs are at least as reliable as live testimony [in traffic cases].").

derance standard allows both parties to share the risk of error in roughly equal fashion, the more stringent clear and convincing standard expresses a preference for one side's interests by allocating more of the risk of error to the party who bears the burden of proof." *In re Dortch*, 860 A.2d 346, 358 (D.C.2004) (internal quotation marks omitted).

 Appellant also complains that the hearing examiner told him he could raise only two defenses. We readily disavow the hearing examiner's statement, which seems to "confuse proof of the violation with the imposition of liability." *Agomo*, 916 A.2d at 192. As we have already discussed, the statute creates a presumption of vicarious liability, see *supra* note 2, and it recognizes only a few ways for the owner of a vehicle to avoid that liability once an infraction has been proven.[13] But "[t]he statutory mechanism for assessing liability once an infraction has been established in no way affects the requirement that the District prove the commission of a traffic infraction by clear and convincing evidence." *Agomo*, 916 A.2d at 192–93. Thus, appellant was entitled to defend by offering proof that he was not speeding.

The hearing examiner's erroneous directive did not prejudice appellant, however. Appellant demonstrated that he was fully capable of ignoring the instruction and presenting other defenses. Indeed, appellant raised a host of constitutional challenges, none of which were expressly sanctioned by the statute, simply "to get it all on the record." However, appellant failed to present, or even proffer, any factual defense to the speeding allegation. Therefore, we can say with "fair assurance" that the hearing examiner's comment did not sway the judgment. *See Bridges v. Clark*, 59 A.3d 978, 988 (D.C. 2013).

Finally, in applying the *Mathews v. Eldridge* balancing test, we recognize that the government's interest in conserving administrative, judicial, and police resources by efficiently adjudicating speeding violations is a significant one. Imposing the procedures appellant recommends would frustrate this goal and would do little more than return the administrative hearings to the state they were in prior to the introduction of the ATE System. The balancing of relevant factors does not require this result. Accordingly, we conclude that the procedures for administrative adjudication of ATE System cases do not deny due process.

## VII. Multiple–Hat Claim

 Appellant also asserts that he was denied due process because the hearing examiner serves as both a prosecutor and a judge. It is true that no prosecutor appeared at appellant's hearing, but there is no due process concern where, as here, the hearing examiner performs no prose-

13. At the time of appellant's infraction, D.C.Code § 50–2209.02(a) (2001) provided that an owner was not liable if he could "furnish evidence that the vehicle was, at the time of the infraction, in the custody, care, or control of another person." Subsection (a) has since been modified and now provides a more limited defense to vicarious liability. See *supra* note 2. Subsection (d) of the statute also provides: "The owner or operator of a vehicle shall not be presumed liable for violations in the vehicle recorded by an automated traffic enforcement system when yielding the right of way to an emergency vehicle, when the vehicle or tags have been reported stolen prior to the citation, when part of a funeral procession, or at the direction of a law enforcement officer." DMV guidance lists the additional defense: "You are not the owner of the vehicle in the photo (i.e. incorrect license plate number)." *Explanation of Photo Enforcement Walk–In Hearings* (DMV–ADS–001– Rev. 09–20–2012).

cutorial functions. *See Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (finding no violation of due process so long as the administrative law judge "does not act as counsel"). As appellant acknowledged at oral argument, the hearing examiner does not prepare the government's case before the hearing. Nor does the hearing examiner advocate on the government's behalf. Instead, the hearing examiner opens the file, discloses the government's evidence, enters it into the record, considers the respondent's defense, then renders a decision. *See* D.C.Code § 50–2302.06(d) (2001) ("After due consideration of the evidence and arguments presented, the hearing examiner shall determine whether the infraction has been established."); 18 DCMR § 1007 (2010) (describing the duties and powers of a hearing examiner). We reject appellant's "advocate-judge-multiple-hat suggestion." *Richardson,* 402 U.S. at 410, 91 S.Ct. 1420.

### VIII. Equal Protection Claim

■ Appellant finally complains that the ATE System violates the Equal Protection Clause because it treats speeding drivers caught on camera differently from motorists stopped by police officers. His principal contention is that drivers caught by the police have an opportunity for default judgment if the officer fails to appear at trial, whereas those caught by the ATE System do not. This opportunity to win by default hardly qualifies as a valued component of procedural fairness. More fundamentally, appellant has not made out a case that the ATE System either burdens a fundamental right or targets a suspect class, so his claim is subject only to rational basis review. *See Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996); *see also Shavitz,* 270

F.Supp.2d. at 722 (subjecting equal protection claim to rational basis review because the "[p]laintiff ha[d] not identified any fundamental right allegedly abridged by the [ATE] statute or ordinance nor ha[d] he alleged membership in any suspect class"). Under that most deferential standard, appellant has not met his burden of demonstrating that there is no conceivable legitimate end served by the legislature's choice to distinguish between drivers caught on camera and those caught by officers.

■ Appellant asserts that the government's professed goal of conserving fiscal and administrative resources by efficiently adjudicating speeding cases is not rationally related to the procedures employed because the administrative hearings do not constitute true "adjudication." We have already rejected that premise. Moreover, appellant fails to consider or rebut any number of other possible grounds for the distinction—for example, that "the variable enforcement scheme increases the likelihood that speeding motorists will be detected, and, as a result, [that] it serves as a greater deterrent to violations of traffic laws." *Dixon v. District of Columbia,* 666 F.3d 1337, 1340 (D.C.Cir.2011) (dismissing equal protection challenge to the District's ATE System); *see also Idris v. City of Chicago,* 552 F.3d 564, 566 (7th Cir.2009) ("A system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called constitutionally whimsical."). Like his previous arguments, appellant's equal protection claim fails.

### IX. Conclusion

Motorists caught by the District's ATE System are subject to civil fines, not imprisonment. They defend against speeding allegations in administrative hearings

and do not enjoy the same procedural safeguards as criminal defendants. Nevertheless, these administrative proceedings provide sufficient process to satisfy the Constitution, including the right to contest the charge before a neutral arbiter. The judgment of the Traffic Adjudication Appeals Board is hereby

*Affirmed.*