*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CV-0718

MATTHEW JOSEPH RICCIARDI, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CAB-006981)

(Hon. Todd E. Edelman, Reviewing Judge)

(Argued November 12, 2025                    Decided May 7, 2026)

*Matthew J. Ricciardi*, pro se.

*Amber Greenaway*, with whom *Brian L. Schwab*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, were on the brief for appellee.

Before BECKWITH and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge*.

DEAHL, *Associate Judge*: Matthew Ricciardi challenges a speeding ticket he received after one of the District's automated speeding cameras clocked him going 61 miles per hour in a 50 mph zone on D.C. Route 295.  The charged infraction was

for exceeding the speed limit by 11 to 15 mph. *See* 18 D.C.M.R. §§ 2200, 2600.1. Ricciardi challenged that ticket, arguing that the District had not satisfied its burden of proving that he was traveling 11 mph or more over the speed limit given that its speeding camera was calibrated to within only a "plus or minus one" mph margin of error. That is, when factoring in that margin of error, the District had proven only that he was traveling somewhere between 60 to 62 mph, making it just as likely that he was traveling less than 11 mph over the speed limit as more than 11 mph over. Because the District is required to prove speeding infractions "by clear and convincing evidence," D.C. Code § 50-2302.06(a), and a mere coin flip is not that, Ricciardi asked that his ticket be dismissed.

Both a DMV hearing examiner and the Traffic Adjudication Appeals Board rejected Ricciardi's challenge. The Board instead adopted the District's view that once a speeding camera passes calibration testing—requiring it to be accurate to within a ±1 mph margin of error—its measurements are "deemed" perfectly accurate as a matter of law per applicable regulations. *See* 18 D.C.M.R. § 1035.2. Under that view, the ±1 mph margin of error "refers to the testing of the radar unit not the speed captured on the violation." So in the Board's telling, while all speeding cameras in fact have some margin of error, those imperfections effectively vanish as a legal matter for purposes of proving infractions.

We disagree with the District and the Board and agree with Ricciardi. The District did not present clear and convincing evidence that Ricciardi was traveling 61 mph or above because its evidence showed only that he was traveling between 60 and 62 mph, making it just as likely that he was traveling beneath the 61 mph threshold as above it. The District and the Board misread 18 D.C.M.R. § 1035.2 as establishing the legal fiction that its speeding cameras are perfectly accurate whenever they measure speeds within a ±1 mph margin of error. The regulation says no such thing: It provides that speeding cameras are "calibrated correctly and in proper working order" so long as they measure speeds within that range, meaning only that properly calibrated cameras are fit to deploy and that tickets may be issued based on their readings, not that they are infallible. And even if this regulation purported to create that legal fiction, it would be invalid because it would be at odds with the statutory requirement that the District prove speeding violations "by clear and convincing evidence." D.C. Code § 50-2302.06(a). The District is not free to override that statutory requirement via regulation, as its interpretation of its regulations would effectively do. We therefore dismiss Ricciardi's speeding ticket.

## I. Facts and Procedural Background

One of the District's automated speeding cameras photographed Ricciardi's vehicle traveling on D.C. Route 295 late one night. The camera captured two images

of Ricciardi's car and license plate, taken half-a-second apart. It also superimposed certain data on those images, including: (1) the location where the camera was positioned, (2) the posted speed limit of "050" mph, and (3) the car's measured speed of "061" mph. The camera reported the measured speed in whole numbers, with no decimals; i.e., it did not say that Ricciardi was traveling 60.6 mph, 61.0 mph, or 61.4 mph—only 61 mph. A week later, the District mailed Ricciardi a notice of infraction charging him with "SPEED 11-15 OVR LIMT" and assessing him the attendant $100 fine for that offense. That notice also informed Ricciardi that he could view the speeding camera's "deployment log" from a publicly accessible website.

The deployment log for that speeding camera showed that a technician tested the camera's measurements two days before and about twelve hours after Ricciardi's perceived infraction. In each test, the camera was tested against a tuning fork calibrated to 40 mph and the camera returned a reading of 40 mph, again with no decimals. The technician thus certified, consistent with applicable regulations, that the reading was "accurate to plus or minus one mile per hour of frequency." *See* 18 D.C.M.R. § 1035.2(b)(1)-(2).

Ricciardi submitted a written challenge to his speeding ticket, which was first considered by a DMV hearing examiner. In his challenge, Ricciardi argued that the

ticket and the accompanying deployment log did not establish by the requisite "clear and convincing evidence," D.C. Code § 50-2302.06(a), that he was traveling 11 mph or more over the 50 mph speed limit as charged. Instead, because the deployment log indicated only that the camera was accurate to within ±1 mph, the most that could be said of its 61 mph measurement was that Ricciardi's vehicle was traveling between 60 mph and 62 mph, with half of that range falling below the 61 mph threshold for the cited infraction.

The hearing examiner rejected Ricciardi's challenge and upheld the ticket. The hearing examiner opined that the District "provided sufficient evidence to demonstrate that equipment was tested, working properly and calibrated correctly," and that Ricciardi "did not submit any evidence to show that the speed recorded was in error." The examiner did not mention the ±1 mph margin of error that Ricciardi had highlighted from the deployment log. Ricciardi sought reconsideration before the hearing examiner, reiterating his same argument. The hearing examiner denied reconsideration and more directly addressed Ricciardi's argument on this second pass, but only by noting that "[t]he margin of error also indicates +1 mph and so there is a real possibility that [Ricciardi's] vehicle was traveling at 62 mph." The hearing examiner did not address the seemingly equal likelihood that Ricciardi was traveling at some speed below the 61 mph threshold that he was charged with.

Ricciardi appealed to the Traffic Adjudication Appeals Board, which likewise upheld the ticket. The Board concluded that the ±1 mph margin of error noted in the deployment log "refers to the testing of the radar unit not the speed captured on the violation." Once a radar unit is properly calibrated to within that ±1 mph margin of error, the Board reasoned, it is "deemed to be calibrated correctly and in proper working order," per 18 D.C.M.R. § 1035.2. The Board further reasoned that the notice of infraction was "prima facie evidence" that Ricciardi was traveling 11 to 15 mph over the limit as charged, *see* D.C. Code § 50-2209.01(b), sufficient to sustain the infraction absent affirmative evidence from Ricciardi that he was not traveling the measured speed. And because Ricciardi did not submit affirmative evidence showing that he was not exceeding the speed limit by 11 mph or more— discounting the deployment log as any evidence of that—the Board affirmed the hearing examiner's decision.

Ricciardi next sought review in the Superior Court, pressing the same argument. The court initially agreed with him and vacated the Board's decision, noting the speeding camera that captured Ricciardi's vehicle was "necessarily also subject to the same margin of error" indicated on the deployment log. The District sought reconsideration, however, and the court reversed course and ultimately upheld the Board's ruling. On reconsideration, the court reasoned that this particular

deployment log indicated the device "was precise in its speed measurement" since the 40 mph reading matched the tuning fork's 40 mph frequency.

Ricciardi now appeals.

## II. Analysis

"Although this is an appeal from a review of agency action by the Superior Court rather than a direct appeal to us, we review the administrative decision as if the appeal had been heard initially in this court," without the intervening review of the Superior Court. *DeVita v. District of Columbia*, 74 A.3d 714, 719 (D.C. 2013) (quoting *Pub. Emp. Rels. Bd. v. Wash. Tchrs.' Union Loc. 6*, 556 A.2d 206, 207 (D.C. 1989)). Ricciardi raises the same argument before this court that he has pressed throughout the proceedings to date: The District did not present sufficient evidence that he committed the charged infraction because it failed to establish "by clear and convincing evidence" that he was traveling 11 mph or more over the posted speed limit.

Before we examine that question, we provide some background on the relevant statutory and regulatory framework.

*A. Statutory and Regulatory Background*

The D.C. Council has authorized the Mayor, through the District's agencies, to use automated camera systems to detect moving violations, including speeding. D.C. Code § 50-2209.01(a). Speeding fines are graduated under the pertinent regulations. As relevant here, a driver exceeding the speed limit by "[u]p to 10 mph" faces a $50 fine, and a driver exceeding it by "11 to 15 mph" faces the $100 fine that Ricciardi was assessed. 18 D.C.M.R. § 2600.1. When an automated camera captures a perceived violation, the District mails the vehicle's registered owner a notice of infraction. D.C. Code § 50-2209.02(b). The notice must include photographs of the perceived infraction, its date and location, the car's license plate number, and the type of violation detected, as occurred here. *Id.*

One statutory and two regulatory provisions speak to the evidentiary weight of this notice of infraction and its contents. By statute, "[r]ecorded images taken by an automated traffic enforcement system are prima facie evidence of an infraction and may be submitted without authentication." D.C. Code § 50-2209.01(b). Similarly, by regulation, "[t]he Notice of Infraction shall constitute prima facie evidence of the statements contained in the notice." 18 D.C.M.R. § 3012.6. A separate regulation governs speeding camera calibration. It provides that a "photo radar device shall be deemed to be calibrated correctly and in proper working order"

if, for a fixed camera (as opposed to a mobile one operated from a vehicle), there is a deployment log indicating, among other things, that within four days before and after the alleged violation "the tuning fork reading was accurate to plus or minus one (1) mile per hour of the tuning fork frequency being used." 18 D.C.M.R. § 1035.2(b)(1). The deployment log must also contain "certifications by a technician or a police officer . . . that the device was correctly set up." *Id.* § 1035.2(b)(2).

At the same time, the statute places the burden of persuasion squarely on the District to prove any detected infractions: "The burden of proof shall be on the District and no infraction shall be established except by clear and convincing evidence." D.C. Code § 50-2302.06(a).

*B. There Was Not Clear and Convincing Evidence of the Charged Infraction.*

The parties' dispute reduces to whether the District actually proved by clear and convincing evidence that Ricciardi was traveling at or over the 61 mph threshold as charged. Clear and convincing evidence "lies somewhere between a preponderance of evidence and evidence probative beyond a reasonable doubt." *In re A.B.*, 955 A.2d 161, 166 (D.C. 2008) (quoting *In re Tw.P.*, 756 A.2d 402, 407 (D.C. 2000)). It requires evidence that establishes the infraction by more than a mere likelihood that it occurred; the evidence must "produce in the mind of the trier of

fact a firm belief or conviction as to the facts sought to be established." *In re Dortch*, 860 A.2d 346, 358 (D.C. 2004) (quoting *In re T.J.*, 666 A.2d 1, 16 n.17 (D.C. 1995)).

To recap the relevant evidence in this case: (1) two photographs showed that one of the District's speeding cameras clocked Ricciardi's car going 61 mph in a 50 mph zone; and (2) a deployment log showed that speeding camera was calibrated within the requisite ±1 mph margin of error.  Ricciardi argues that this evidence on its face demonstrates only that he was going somewhere between 60 and 62 mph, which is not enough to give rise to a firm conviction that he was traveling on the higher end of that range—at or above 61 mph.  Indeed, Ricciardi argues that because half of the speeds within the 60 to 62 mph range "fall below the charged range," under 61 mph and perhaps as low as 60 mph, "and half fall within the charged range," from 61 to 62 mph, the District's evidence amounts to no more than a "coin flip" that he was traveling 11 mph or above the posted speed limit as charged.

We agree with Ricciardi that this evidence leaves it just as likely that he was traveling below 61 mph as at or above that threshold.  And because a coin flip is not clear and convincing evidence, the evidence seems to be insufficient to sustain the

charged infraction.[1]  *See In re Romansky*, 938 A.2d 733, 742 (D.C. 2007) (evidence that is "virtually in equipoise" does not satisfy burden of proving charge by clear and convincing evidence).  The District offers various counterpoints to that straightforward conclusion, however, and we now address those.

*C. Statutes and Regulations Do Not Fill the Gaps in the District's Evidence.*

The District counters by stressing both statutory and regulatory provisions that, in its view, effectively elevate its evidence to clear and convincing proof of the charged infraction as a matter of law.

The District first highlights the statutory provision that states: "Recorded images taken by a" speeding camera "are prima facie evidence of an infraction and

---

[1] One might think that the range from 61 to 62 mph is some sliver larger than the range from 60 to just below 61 mph, given that a measure of precisely 61 mph fits only within the higher range.  We doubt that's right.  *See* John Morgan Russell, Significant Statistics: An Introduction to Statistics § 4.4, at 185 (2025) (explaining that for "continuous variables" capable of infinitely fine gradations, like speed measurements, the inclusion or exclusion of endpoints does not change their probability because "[t]he probability that x takes on any single individual value is zero"),  *available  at*  https://doi.org/10.21061/significantstatistics; https://perma.cc/JU5A-R5JB.  Put in the terms of this case, the odds that Ricciardi was traveling precisely 61 mph when photographed—and not one of the infinite fractions above or below it within the 60-62 mph range—are mathematically zero. But we will leave this theoretical point to the mathematicians.  For present purposes, it suffices to say that even a 50.1% chance that Ricciardi was traveling 61 mph or above still falls well short of clear and convincing evidence.  *See In re Romansky*, 938 A.2d at 742.

may be submitted without authentication." D.C. Code § 50-2209.01(b). And because "[p]rima facie evidence is, by definition, evidence that suffices to carry a party's burden of proof," the District argues that it has perforce carried its evidentiary burden unless Ricciardi produced affirmative evidence that "he was driving at a speed less than 61 mph," which the District argues he has not done. *See generally Royal v. D.C. Metro. Police Dep't*, 314 A.3d 67, 77 (D.C. 2024) ("The term 'prima facie evidence' is commonly understood to mean 'evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced.'" (quoting Black's Law Dictionary (11th ed. 2019))).

We disagree because Ricciardi has produced contradictory evidence in the form of the deployment log. The District is correct that a prima facie case typically refers to proof sufficient to support a judgment, but only presumptively so. That is, the presumption will stand only if no "contradictory evidence is produced." *Id.*; *see also Am. Stud. Ass'n v. Bronner*, 259 A.3d 728, 744 & n.57 (D.C. 2021) (recognizing a "prima facie showing" as one that is "[s]ufficient to establish a fact or raise a presumption unless disproved *or rebutted*" (quoting Black's Law Dictionary (10th ed. 2014) (emphasis added))). The problem for the District is that Ricciardi did produce contradictory evidence when he highlighted the deployment log, which indicated that the speeding camera that measured his speed had some margin of

error, and that the District could say only that it was within the ±1 mph margin of error permitted by law.

Contrary to the District's suggestions, the fact that the deployment log was referenced in the District's own notice of infraction does not preclude it from supplying the rebuttal evidence necessary to overcome the District's prima facie case. A cited individual can of course rebut a presumptively sufficient case by pointing to apparent flaws within the evidence itself, rather than producing truly independent evidence. For instance, just imagine if Ricciardi were charged with speeding 11 mph over the limit but the District's own pictures showed his recorded speed as 50 mph in a 50 mph zone—pointing that discrepancy out would constitute evidence sufficient to rebut the District's prima facie case. And here, the deployment log coupled with the fact that Ricciardi was cited for traveling at the very bottom of the charged range was similarly sufficient to rebut the District's prima facie case because it cast serious doubt on the District's allegation that Ricciardi was in fact traveling 61 mph or above. *See Gatewood v. D.C. Water & Sewer Auth.*, 82 A.3d 41, 52 (D.C. 2013) (prima facie case can be rebutted through any "credible evidence").

The District counters that all we know from the deployment log is that the speeding camera here measured speeds within the permitted ±1 mph margin of error,

but it might have been more accurate than that. That is, perhaps the camera was in fact accurate to within a ±0.5, or even a ±0.1 mph, margin of error. That uncertainty does not help the District's cause for three reasons. First, the exact margin of error is not critical to our analysis. If this particular speeding camera's margin of error was ±0.5 mph, or ±0.1 mph, the result would be the same. In either case, once the margin of error is factored in, there is no reason to think it any more likely that Ricciardi was traveling within the half of that range at or above 61 mph than within the half of that range below 61 mph. Second, any uncertainty must be held against the District in light of its statutory burden of persuasion, not to mention that it is uniquely positioned to provide information about its speeding cameras' precise margins of error in the event that more detailed information actually exists.[2] *See Lasche v. Levin*, 977 A.2d 361, 373 (D.C. 2009) (typically, "the burden to produce evidence . . . must rest with the party . . . [that] is uniquely situated to produce [the]

---

[2] The District argues that "[t]here is no evidence in the record that any such error would be evenly distributed above and below the camera's reading," so that it is conceivable that its cameras only err downward to the perceived speeder's benefit. That might be a theoretical possibility, but the District seems to mistakenly think that presenting a prima facie case shifts the burden of persuasion to Ricciardi to prove his defense beyond all doubt. That is wrong. *See Blount v. Nat'l Ctr. for Tobacco-Free Kids*, 775 A.2d 1110, 1116 (D.C. 2001) (noting that presenting a prima facie case shifted the "burden of production, not of persuasion"). As the statutory scheme makes clear, the burden of persuasion is always on the District to prove these traffic offenses by clear and convincing evidence, D.C. Code § 50-2302.06(a), and the District's evidence proved no more than that this camera's margin of error was within ±1 mph.

evidence"). Third, the District acknowledges that all of its automated speeding cameras have *some* margin of error, and that alone leaves the evidence in equipoise regarding whether Ricciardi was traveling at or above the 61 mph threshold.[3] Such equivocal evidence is well short of clear and convincing evidence.

The District next pivots to the regulation that the Board likewise relied upon in reaching its decision, which provides that a "photo radar device shall be deemed to be calibrated correctly and in proper working order if," among other things, "the tuning fork reading was accurate to plus or minus one (1) mile per hour of the tuning fork frequency." 18 D.C.M.R. § 1035.2. In the District's telling, this means that once a camera passes calibration, its output is "treated as accurate in law, even if it

---

[3] The District suggests that Ricciardi could have but did not avail himself of various discovery devices to uncover this camera's true margin of error. It points out that those discovery devices include "applying for the issuance of subpoenas," "seeking authorization to take depositions," and "submitting written interrogatories." *Devita*, 74 A.3d at 723 (citing 18 D.C.M.R. §§ 1020-22). We think it was quite sensible for Ricciardi to rely on the deployment log as the entire universe of what the District could supply about this particular camera's accuracy, and indeed, the District was unable to represent that it had any more information available to it when pressed on the point at oral argument. If the District in fact has more detail about a particular camera's calibration that would help support its case—for instance, if a camera erred only downward when clocking a person's speed, to that person's benefit—it can put that information in its deployment logs in the future, or otherwise affirmatively produce it when faced with challenges similar to Ricciardi's that sow serious doubts about whether the individual committed the charged infraction. On the current record, without such evidence, it is just as likely that Ricciardi was traveling below 61 mph as above it, and that uncertainty is fatal to the District's charge, not to Ricciardi's defense against it.

might not be 100% accurate in fact." This echoes the Board's reasoning that the ±1 mph margin of error noted in the deployment log "refers to the testing of the radar unit not the speed captured on the violation." There are three problems with this position: (1) that is not a viable reading of the regulation;[4] (2) it would lead to clear absurdities; and (3) the regulation would be invalid if read in that manner because it would contravene the District's statutorily prescribed burden of proof. We now elaborate on each of these three points.

First, the plain text of this regulation is not susceptible to the District's reading. Section 1035.2 deems a camera that measures speeds within a ±1 mph margin of error "to be calibrated correctly and in proper working order," but it does not deem the camera to be "perfectly accurate," "precise," or free from measurement

---

[4] The parties have not briefed, and we do not decide, the extent to which we should defer to an agency's interpretation of its own regulations. This court has historically deferred to agencies' reasonable interpretations of their own regulations. *See, e.g.*, *McDonald v. D.C. Bd. of Zoning Adjustment*, 291 A.3d 1109, 1115 (D.C. 2023). But the Supreme Court's recent opinion in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), in addition to upending traditional "*Chevron* deference," casts some doubt upon the propriety of so-called "*Auer* deference" pertaining to agency interpretations of their own regulations. *See Niblock v. Univ. of Ky*, 165 F.4th 460, 471 (6th Cir. 2026) (Sutton, J., concurring) (positing that "we no longer lightly defer to agency interpretations of their own regulations," and arguing that without *Chevron* deference, "*Auer* deference narrows considerably, if indeed it remains meaningful at all"). We do not address that question because, even assuming *Auer* deference applies here, the DMV and District's interpretation of the pertinent regulation is an unreasonable one that we would not defer to in any event.

errors, as the District would have it. There is a plain difference between saying a device is in "proper working order"—meaning it functions within acceptable tolerances and is suitable for its intended use—and saying that it measures with zero error. To illustrate the point, most of us would consider a bathroom scale to be in proper working order if it measures weight to within ±1 pound. But if anything hinged on a greater degree of precision—say you're a boxer near the limit of your weight class and coming up on the official weigh-in—you would not treat the scale as being perfectly accurate down to the ounce or the gram. That is, while the scale is perfectly suitable for your intended use of weighing yourself, you would keep the scale's margin of error in mind when assessing its readings near the thresholds, not ignore it. So the fact that this speeding camera was in "proper working order" under the regulation did not permit, much less require, the relevant factfinders to close their eyes to its acknowledged margin of error.[5]

Second, the District's contrary reading of this regulation would produce absurd results, further counseling against its interpretation. *See In re Bright Ideas*

---

[5] Notably, the factfinder here—the hearing examiner—endorsed Ricciardi's understanding that the speeding camera's margin of error was ±1 mph. The hearing examiner simply noted that there was a "real possibility that [Ricciardi's] vehicle was traveling at 62 mph" in light of that margin of error, while offering no explanation for how the District carried its burden given that Ricciardi was just as likely to have been traveling beneath the 61 mph threshold as above it.

*Co.*, 284 A.3d 1037, 1049-50 (D.C. 2022) (rejecting an interpretation of a motor vehicle regulation because it led to "absurd results" and "obvious injustice"). Suppose a speeding camera consistently measures speeds as 1 mph above the tuning fork's frequency during calibration. Under the District's interpretation, the technician could certify that reading as within the ±1 mph tolerance, and the camera would pass calibration. Every subsequent measurement would then be treated as legally perfect, even though the District's own testing shows the device reads high. If that's right, then a vehicle traveling at precisely the speed limit—or even 0.9 mph below it—could be ticketed for speeding based on that camera's inflated readings, and that ticket would have to be upheld. *See* 18 D.C.M.R. § 2600.1 (penalty table providing $50 fine for speeding "[u]p to 10 mph in excess of limit"). That is not a sensible reading of the regulation.

Third, even if we read this regulation as the District does, it would be invalid and have no effect because it would contravene the statute requiring the District to prove traffic offenses "by clear and convincing evidence." D.C. Code § 50-2302.06(a); *see also Tenants of 738 Longfellow St., N.W. v. D.C. Rental Hous. Comm'n*, 575 A.2d 1205, 1213 (D.C. 1990) ("[A] regulation which create[s] a rule out of harmony with the statute is a mere nullity." (quoting *District of Columbia v. Jones*, 287 A.2d 816, 818 (D.C. 1972))). The legislatively prescribed "clear and convincing evidence" standard is an "intentionally elevated one," *Blackson v. United*

*States*, 897 A.2d 187, 195 n.12 (D.C. 2006), meant to protect "particularly important individual interests in various civil cases," *In re Nelson*, 408 A.2d 1233, 1234 n.2 (D.C. 1979) (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)). The District is not free to simply regulate around that statutory requirement and "deem" that some modicum of evidence that is less than clear and convincing nonetheless satisfies that standard. The District can no more pass a regulation that counterfactually deems its speed measurement devices to be perfectly accurate than it could pass a regulation deeming everybody on the District's roadways to be guilty of whatever they happen to be charged with.

Finally, while the District does not seem to defend the Superior Court's reasoning on reconsideration, for the sake of completeness we explain why we disagree with it as well. In our view, the court had it right the first time when it rejected the Board's reasoning that the ±1 mph margin of error noted in the deployment log "refers to the testing of the radar unit not the speed captured on the violation." That is not a defensible view, as the court initially explained, because the District's speeding cameras "are necessarily also subject to the same margin of error" that applies to how they are calibrated. The court reversed course on reconsideration, however, positing that the deployment log showed the speeding camera "was precise in its speed measurement" since the 40 mph reading matched the tuning fork's 40 mph frequency. That is mistaken. The fact that this speeding

camera returned a 40 mph measurement when measured against a tuning fork with a 40 mph frequency is no indication that it did not have any margin of error, which, as the District correctly acknowledges, all speeding cameras invariably have. The speeding camera may yet have inflated speeds by +0.99 mph, or deflated them by that same margin, consistent with the deployment log's readings—the camera reported its readings only in whole integers, with no decimals. So there is simply no telling the exact margin of error from this record beyond that it is within ±1 mph and, for that reason, the District did not satisfy its burden to prove this particular speeding infraction by clear and convincing evidence.

*D. The District's Alternative Argument About Its Penalty Table Is Unavailing.*

The District also offers a fallback position. It argues that, even accepting that Ricciardi's true speed was somewhere between 60 and 62 mph, the $100 penalty still applies to any speed in excess of 10 mph over the posted speed limit. The argument proceeds in four steps: (1) the District's penalty table uses consecutive integers as defining the pertinent ranges for assessing penalties—speeding "[u]p to 10 mph" over the limit ($50); "11 to 15 mph" over ($100); "16 to 20 mph" over ($150), etc.; (2) read "hyper-literally, the table seems to provide *no penalty*" in the gaps between the bookending integers—e.g., speeding 10.5 mph over the limit is neither "up to 10 mph" over or between 11 to 15 mph over; (3) to avoid that absurdity, "the best

interpretation" of the table is that anything above 10 mph over the speed limit—like 10.1 mph over—qualifies as "11 to 15 mph" over, just as anything above 15 mph over the speed limit qualifies as "16 to 20 mph" over, and so forth; and (4) there is clear and convincing evidence that Ricciardi was traveling more than 10 mph over the speed limit, so that the $100 penalty applies. We disagree with the District at the third, "best interpretation" step of its argument, for two reasons.

First, there is no practical absurdity in the penalty table when applied according to its plain terms, because the District is always free to charge a less serious offense than the harshest one applicable—a person who is traveling precisely 10.5 mph over the speed limit is also traveling 8, 9 and 10 mph over the speed limit (though they are not traveling 11, 12, or 13 mph over). Put in a different context, if you slept for exactly nine hours last night, you also slept for eight hours last night, but not ten. That resolves any difficulty with applying the penalty table in practice. Even if Ricciardi were traveling 20 mph over the speed limit, nothing precluded the District or one of its officers from going easy on him and citing him for going 10 mph over the limit, as he would unquestionably be guilty of that offense as well.

Second, while we agree that traveling 10.5 mph over the speed limit is not, strictly speaking, speeding "up to 10 mph" over the limit in the table's parlance, the far better way to smooth over the gaps in the penalty table is to resolve them in

Ricciardi's favor—by reducing rather than inflating the applicable penalty. To read the penalty table as the District prefers, where "11 mph" over includes anything between "10.1 and 11 mph" over—or even to read it as applicable to anything between 10.5 and 11 mph over, as the District alternatively argues under a "rounding" theory—would raise serious Due Process concerns about fair notice that we should endeavor to avoid. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[T]he Due Process Clause . . . requires the invalidation of laws that are impermissibly vague" even in a civil enforcement context); *Mashaud v. Boone*, 295 A.3d 1139, 1169-70 (D.C. 2023) (en banc) (discussing "constitutional avoidance" canon of construction). And when faced with grievous ambiguity—like how to fill the gaps in the table's plain terms, if they need filling at all—the rule of lenity applies when interpreting civil traffic regulations and dictates that we resolve that ambiguity in favor of leniency. *See Whitfield v. United States*, 99 A.3d 650, 656 n.14 (D.C. 2014) (applying "the rule of lenity to civil traffic regulations"). That is, the best way to resolve the seeming absurdity with a hyper-literal reading of the penalty table is to recognize that a $50 penalty applies to anything up to 11 mph over the limit (and thereover, if the District is feeling lenient).

For those reasons, we conclude that the District cannot prove a charge for speeding "11 to 15 mph in excess" of the limit, 18 D.C.M.R. § 2600.1, unless it has proven by clear and convincing evidence that the cited individual was, in fact,

speeding 11 mph or more over the speed limit.  And here, the evidence did not satisfy that burden given that Ricciardi's speed was measured at the very bottom of the charged  range (11 mph over), and the only evidence about the speeding camera's admitted margin of error is that it was within ±1 mph, rendering it just as likely that Ricciardi was traveling below 61 mph as above it.

### III. Conclusion

We thus reverse the Superior Court's order upholding the Board's decision. Ricciardi asks that we dismiss his speeding ticket outright rather than remanding for assessment of the lesser $50 penalty that he admits could have been properly assessed against him.  In support of that remedy, Ricciardi stresses that he "has repeatedly acknowledged that the District's evidence is sufficient to establish" liability for that lesser $50 offense, but "the District *chose* to maintain the original charge" of speeding 11 to 15 mph over the limit, without ever advancing the lesser charge as an alternative.  The District offers no counter to that and does not ask us to remand the case for imposition of a $50 fine if we agree with Ricciardi on the merits.  So we remand the case with instructions to dismiss Ricciardi's notice of infraction.

*So ordered.*